Sterling A. Brennan (Utah State Bar No. 10060; E-mail: sbrennan@mabr.com)
R. Parrish Freeman (Utah State Bar No. 07529; E-mail: pfreeman@mabr.com)
MASCHOFF BRENNAN LAYCOCK GILMORE ISRAELSEN & WRIGHT PLLC
201 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone:   (435) 252-1360
Facsimile:   (435) 252-1361

Michael A. Jacobs (*Pro Hac Vice* application forthcoming; E-mail: MJacobs@mofo.com)
Eric M. Acker (*Pro Hac Vice* application forthcoming; E-mail: EAcker@mofo.com)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:   (415) 268-7000
Facsimile:   (415) 268-7522

Jeffrey A. Jaeckel (*Pro Hac Vice* application forthcoming; E-mail: JJaeckel@mofo.com)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue NW, Suite 6000
Washington, DC  20006-1888
Telephone:   (202) 887-1500
Facsimile:   (202) 887-0763

Attorneys for Plaintiff PROPERTY SOLUTIONS INTERNATIONAL, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| PROPERTY SOLUTIONS INTERNATIONAL, INC., a Delaware corporation, | Civil Action No. 2:15-cv-00102-DBP |
| Plaintiff, | **COMPLAINT** |
| vs. | **Jury Trial Demanded** |
| YARDI SYSTEMS, INC., a California corporation, | |
| Defendant. | |

Plaintiff Property Solutions International, Inc. ("Property Solutions"), for a Complaint against defendant Yardi Systems, Inc. ("Yardi"), hereby alleges as follows:

## I.    THE PARTIES

1.    Property Solutions is a Delaware corporation with its principal place of business located at 2912 Executive Parkway, Suite 100, Lehi, Utah 84043.

2.    Yardi is a California corporation with its principal place of business located at 430 South Fairview Avenue, Santa Barbara, California 93117.

## II.    JURISDICTION AND VENUE

3.    This civil action (the "Action") arises under the laws of the United States (i.e., the Lanham Act, 15 U.S.C. § 1051 *et seq*., and the Sherman Act, 15 U.S.C. § 1 *et seq*.) and Utah statutory and common law.  The above-entitled Court has jurisdiction over the subject matter of the federal law claims for relief in the Action pursuant to 28 U.S.C. § 1331 and Section 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, and supplemental jurisdiction over the Utah state law claims for relief pursuant to 28 U.S.C. § 1367.  The Court also has jurisdiction over the subject matter of each of the claims for relief asserted by Property Solutions in the Action pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the two parties (*i.e.*, Property Solutions is a Delaware corporation and Yardi is a California corporation) and the amount placed in controversy by each of the first through eighth claims for relief herein exceeds $75,000, exclusive of interest, costs, and attorneys' fees.  Likewise, the value of the non-monetary relief sought by the claims for relief set forth herein also exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

4.     The Court may, and should, exercise personal jurisdiction over Yardi because, among other things, Yardi (a) conducts substantial business within Utah, (b) has entered into contracts in Utah, including with respect to the subject matter of the claims for relief asserted in the Action, (c) has committed tortious acts causing harm to Property Solutions within Utah, and (d) has made other relevant contacts in Utah.

5.     Venue in this judicial district (i.e., within the State of Utah) is proper pursuant to 28 U.S.C. § 1391(b) & (c) and § 1400(a), and Section 12 of the Clayton Act, 15 U.S.C. § 22, in that (a) a substantial part of the events giving rise to Property Solutions' claims for relief occurred, (b) a substantial part of the property that is the subject of the claims for relief is present, and (c) Yardi may be found, in this judicial district.

### III.   FACTUAL BACKGROUND

6.     Property Solutions and Yardi are software and technology companies, and each makes and sells various competing property management software products.  Property management software—depending upon its features—generally allows owners and managers of multiple rental and lease units to better manage their rental properties by offering functionality to perform accounting and management tasks, including organizing and storing resident information, processing applications to rent properties, taking maintenance requests from residents, and processing payments.

7.     This case, and Property Solutions' Complaint, arises from Yardi's pattern of unfair, unlawful, and anti-competitive actions against Property Solutions with respect to the provision and use (or Yardi's attempts to block Property Solutions' provision and its customers' use) of property management software.  Yardi's conduct has severely harmed Property Solutions

and Property Solutions' current customers, and will continue to cause injury to current and potential future customers by interfering with full and free competition in pertinent markets for property management software.

A.   **Property Solutions and Its Products**

8.     Property Solutions was founded in 2003 by three students at Brigham Young University ("BYU"), with the goal of designing and marketing a new property management software product.  Those founders won BYU's business plan competition, and then went on to take first place in FORTUNE SMALL BUSINESS MAGAZINE's 2003 MBA Showdown—a national business plan competition among winners of all accredited, MBA-sponsored business plan competitions.

*Property Solutions' Entrata Products*

9.     Since its founding in 2003, Property Solutions has grown to nearly 570 employees in the United States, and was the first comprehensive property management software provider to offer a single-login, open-access, Platform as a Service ("PaaS") system.  That entire system, now called ENTRATA™ PAAS ("Entrata PaaS"), offers a wide variety of online property management tools built around, and that successfully integrate with, among others, Property Solutions' base property accounting, purchasing, facilities, and leasing data software product:  ENTRATA™ CORE ("Entrata" or "Entrata Core").  The various tools, or "point solutions," offered by Property Solutions that "plug-in" to, or are integrated into, Entrata Core and other third-party providers' property management core accounting software systems include website, mobile application, payment, lease signing, accounting, and resident management tools (each of these plug-in or

integration products or tools is sometimes hereinafter referred to collectively as "Property

Solutions' Point Solution Products" or "Point Solution Products").

10.     Property Solutions' Entrata PaaS is currently used at more than 20,000 apartment

communities nationwide, including by 33 of the National Multifamily Housing Council's "Top 50

Largest Managers."  Property Solutions' open "application program interface" ("API") and

superior selection of third-party integrations (i.e., Property Solutions' Point Solution Products)

offer property management companies the freedom to choose the technology and software that

best fit their needs.

11.     Property Solutions' products and efforts in recent years have garnered considerable

industry attention and accolades.  For example, in 2013, in recognition of its three-year growth of

496%, Property Solutions was ranked by INC. MAGAZINE as Utah's third largest privately-owned

job creator (and the 59th largest nationwide) in the second annual "Hire Power Awards,"

honoring companies that lead the way in creating American jobs.

12.     Today, Property Solutions markets several products, including suites for

*accounting* (Entrata Core), *marketing* (Prospect Portal®, ILS Portal®, PricingPortal™, and SEO

Services), *leasing* (Site Tablet®, LeaseExecution™, ResidentVerify™, LeadManager™; and The

Leasing Center™), and *resident management* (ResidentPortal™, Resident Insure®, Resident

Pay®, Message Center, ResidentUtility®, and ParcelAlert™), among others.

13.     In 2003, Property Solutions designed and marketed its core, flagship property

management software product, Entrata, which initially was called "Vantage XP," renamed

"Resident Works" in 2004, and then renamed again to "Entrata Core" in 2012.  Shortly after its

founding, however, Property Solutions decided to change its primary focus from what became

Entrata to website and other Point Solution Products that were designed for use with existing third-party property management accounting software products (such as Yardi's Voyager product), while continuing to support Property Solutions' own Vantage XP/Resident Works customers.

### Property Solutions' Point Solution Products

14.     In 2004, Property Solutions pioneered Resident Pay®, the technology and Point Solution Product that allows residents to pay their rent to a property management company online. Property Solutions also developed two categories of websites that interfaced with existing property management software:  (a) "Prospect Portal®," which is directed at *potential residents* and allows them to review property listings, take virtual tours of properties, and submit rental applications and fees; and (b) "ResidentPortal™," which is directed at *current residents*, and allows them to, among other things, pay their rent online, read and post to community message boards, submit maintenance requests, and view event calendars.  Each of Property Solutions' Point Solution Products, such as Prospect Portal and Resident Portal, can be customized either to add or remove features, according to the needs and requests of individual property management customers.

15.     Property Solutions' Point Solution Products serve as the portal or access point between an end user (e.g., a resident or prospective resident) and a property management software company's database (e.g., a database maintained by Property Solutions, Yardi, or another third-party).  Property Solutions' Point Solution Products move information to and from the database through a specialized interface in order to fulfill the end user's request.  For example, a prospective resident might use a website generated by Property Solutions to view pricing and availability information (pulled from the property management software company's database) and

then fill out a guest card or application.  The information provided by the prospective resident is then transferred back to the property management software company's database through a software interface and stored.  When the property manager searches for that information, the database locates and sends the information back to the Property Solutions' Point Solution Product, where it is displayed to the property manager.  Property Solutions has successfully integrated its Point Solution Products with the core accounting software programs of several other property management software vendors in the industry, including the largest and dominant provider of such software:  Yardi.

16.     In 2012, with the launch of Entrata PaaS, Property Solutions became the first single-platform, multi-tenant property management software provider with a comprehensive, cloud-based product suite for the enterprise market.  Property Solutions' platform—including the Property Solutions' Point Solution Products that integrate seamlessly with Entrata Core and were constructed using the same software architectural design—offers a wide variety of software capabilities for property managers using PaaS technology.  All of these software capabilities are stored, maintained, and administered by Property Solutions, rather than locally on a customer's server.  This cloud-based approach allows customers to make use of Property Solutions' software while dramatically lowering their information technology costs.

**B.     <u>Yardi and Its Products</u>**

17.     Yardi is the dominant provider of property management accounting software for use by the multi-family housing industry in the United States.  In 2003, when Property Solutions was founded, Yardi had already long been in, but was also limited to, the business of providing property management *accounting* software.  Yardi's products did *not* then include specialized

tools or integration products (such as the Point Solution Products developed by Property Solutions) that focused on providing services to residents and prospective residents, such as guest cards (in which, for example, a prospective resident provides contact information and details on the type of unit sought), rental applications, payments, and maintenance request processing. Further, as Property Solutions understands it, Yardi's accounting software (in contrast to Property Solutions' Point Solution Products) did not allow any significant customization for individual property manager customers.  As a result of the limits of Yardi's property management accounting software products (primarily "Voyager," as further described below), and in order to meet the needs and demands of its customers, Yardi—at least initially—actively encouraged third parties, including Property Solutions, to develop specialized modules or plug-ins to interface with Yardi's primary accounting software—Voyager.  Yardi also provided the technical support necessary to facilitate those third-party integrations.

18.     When, however, third-party integration products (including Property Solutions' Point Solution Products) began to threaten Yardi's market dominance and control, Yardi responded by (i) undertaking initiatives to damage and/or undermine the performance and marketability of those third-party integration products (including Property Solutions' Point Solution Products) and (ii) undertaking to expand beyond its original base accounting software (i.e., Voyager) and offering products intended to leverage Yardi's existing dominance in accounting software into the adjacent product category for integration products, thereby supplanting those third party products that posed a threat to Yardi's dominance (including Property Solutions' Point Solution Products).  Yardi's new offerings include "suites" similar to

those offered by Property Solutions.  Marketed by Yardi under the name "Yardi Multifamily

Solutions," the software suites presently available are:

    a.    a property management suite (Yardi Voyager® Residential), which provides

          bundled  property management and accounting services;

    b.    the "Yardi Marketing Suite" (comprised of Rent *Café*[TM], Yardi LeasingPad

          CRM[TM], and Rent *Café* Connect[TM]), which provides marketing and leasing

          services; and

    c.    the "Yardi Multifamily Suite" (comprised of RENTmaximizer, Yardi Resident

          Screening[TM], ResidentShield® Protection Plan, Yardi Energy Solutions[TM], Yardi

          Payment Processing[TM], Yardi Procure to Pay[TM], Yardi Orion[TM] Business

          Intelligence, and Yardi Orion[TM] Document Management).

(Yardi's plug-in or portal products intended to compete with Property Solutions' Point Solution

Products are sometimes referred to herein collectively as "Yardi's Plug-In Products.")

    19.    The following table shows comparisons between Property Solutions' products and

Yardi's:

| Property Solutions' Product | Yardi's Competing Product | Property Solutions' Product Suite | Yardi's Product Suite |
|---|---|---|---|
| **Entrata Core** (property management accounting, reporting, purchasing, facilities management, resident management, and leasing data) | **Yardi Voyager Residential** (property management accounting, reporting, and analytics.) and **Yardi Orion Business Intelligence** (produces flexible reports and dashboards that combine operational, financial, and ancillary data. | Management | Yardi Multifamily Suite |

| Property Solutions' Product | Yardi's Competing Product | Property Solutions' Product Suite | Yardi's Product Suite |
|---|---|---|---|
| **Craigslist** (part of internet listing service ("ILS") tools) | **Rent *Café*** (marketing websites, lead generation, social media marketing, reputation management, leasing, rent payments and maintenance requests) | Marketing | Yardi Marketing Suite |
| **ILS Portal** (online marketing with automated feeds to all major Internet Listing Services) | **Rent *Café*** (defined above) | Marketing | Yardi Marketing Suite |
| **PricingPortal** (revenue management system used to monitor and predict rent lifecycle, area rent rates, automatically update prices in marketing and ILS feeds) | **RENTmaximizer** (revenue management system used to price leases using the balance between real-time inventory, traffic, and market conditions) | Marketing | Yardi Multifamily Suite |
| **Prospect Portal** (marketing websites, lead generation conversion and tracking, guest card integration, showcasing listings in real time) | **Rent *Café*** (defined above) | Marketing | Yardi Marketing Suite |
| **SEM Services** (combines search engine optimization ["SEO"] and pay-per-click ["PPC"] services for better website marketing) | **Rent *Café*** (defined above) | Marketing | Yardi Marketing Suite |
| **Social Media** (brings Prospect Portal and Resident Pay functionality to a property's Facebook fan page) | **Rent *Café*** (defined above) | Marketing | Yardi Marketing Suite |
| **Mobile Portal** (mobile version of Prospect and Resident Portal) | **Rent *Café*** (defined above) | Marketing / Residents | Yardi Marketing Suite |
| **Call Analysis** (evaluate property lead calls to assess the performance of leasing agents on site) | **Rent *Café* Connect** (Yardi associates receive and respond to resident calls, and enter maintenance requests and credit card payments) | Leasing | Yardi Multifamily Suite |

| Property Solutions' Product | Yardi's Competing Product | Property Solutions' Product Suite | Yardi's Product Suite |
|---|---|---|---|
| **Lead Manager**[TM] (consolidates lead traffic into one central dashboard, providing reminders and alerts, reporting, and marketing insight) | **Yardi PopCard**[TM] **(**tracks and manages leads, maximizes leasing and retention, and improves sales and employee performance.) | Leasing | Yardi Multifamily Suite |
| **Lease Execution** (allows prospects and residents to digitally sign leases in a secure environment) | **Rent *Café*** (defined above) | Leasing | Yardi Marketing Suite |
| **LeasingCenter** (Property Solutions associates receive and respond to resident calls, set appointments, handle maintenance requests, and follow up with prospects) | **Rent *Café* Connect** (defined above) | Leasing | Yardi Marketing Suite |
| **Resident Verify** (real-time applicant and employee background and credit screening services) | **Yardi Resident Screening** (tenant screening system offering background checks and credit reports) | Leasing | Yardi Multifamily Suite |
| **SiteTablet** (remotely access community information, real-time pricing and availability, applications, and leasing) | **LeasingPad CRM** (remotely access contact, lead, lease, resident, and property data) | Leasing | Yardi Marketing Suite |
| **Call Tracker**[TM] (provides the ability to track record and report on all incoming calls to the property) | **Yardi PopCard** (defined above) | Leasing / Marketing | Yardi Multifamily Suite |
| **Message Center** (allows property managers to communicate efficiently with both prospective and current clients via text message, personal e-mail, or bulk e-mail) | **Rent *Café*** (defined above) | Residents | Yardi Marketing Suite |

| Property Solutions' Product | Yardi's Competing Product | Property Solutions' Product Suite | Yardi's Product Suite |
|---|---|---|---|
| **ParcelAlert** (package tracking system designed to streamline package logistics and decrease delivery time by sending automatic e-mail or text notifications to residents) | **Rent** *Café* (defined above) Via **Yardi Concierge** ™ (allows residents to authorize guests, reserve amenities, and track deliveries online) | Residents | Yardi Marketing Suite |
| **Resident Pay Check Scanning** (allows property manager to scan personal or corporate checks at the office and payment is posted automatically to the resident's ledger) | **Yardi Online Payments** (includes Yardi Walk-in Payment System, online payments, and check scanning) | Residents | Yardi Multifamily Suite |
| **Resident Insure** (provides access to insurance coverage against theft, fire, liability, and more to residents during the lead-to-lease process) | **ResidentShield Protection Plan** (comprehensive property risk management with two renter's insurance options that protects owner assets and provides reliable coverage to renters.) | Residents | Yardi Multifamily Suite |
| **Resident Pay** (allows residents to pay rent online via credit card, debit card, Moneygram, check scanning, or other methods) | **Yardi Online Payments** (defined above) | Residents | Yardi Multifamily Suite |
| **ResidentPortal** (provides residents 24-hour access to pay rent and submit work orders; updates community information.) | **Rent** *Café* (defined above) | Residents | Yardi Marketing Suite |
| **ResidentUtility** (paperless utility billing and management solution built to increase asset value by ensuring proper utility billing) | **Yardi Energy Solutions** (automated utility billing, energy management, and submeter data administration) | Residents | Yardi Multifamily Suite |

| Property Solutions' Product | Yardi's Competing Product | Property Solutions' Product Suite | Yardi's Product Suite |
|---|---|---|---|
| **InspectionManager** (provides the tools required to manage and perform inspections of every unit, building and amenity at a property level) | **Yardi Inspections** (schedule, perform and manage all types of inspections, including annual, regulatory, due diligence and more.) | Management | Yardi Multifamily Suite |
| **Reputation Advisor**<sup>TM</sup> (gathers property reviews from across the web into one easy-to-use area, giving property management professionals the ability to stay on top of what renters are saying about their community. | **Rent *Café*** (defined above) | Marketing | Yardi Marketing Suite |

***Yardi's Voyager Market Dominance***

20.　　Yardi's Voyager Residential software product ("Voyager") is property management *accounting* software designed for property owners, managers, and investors.  On information and belief, Yardi's Voyager has in excess of a 60% share of the market for property management accounting software used by the enterprise multi-family housing industry (usually, for properties with at least 1,000 units) in the United States (the "Accounting Product Market").  Other products with far less significant market share in the Accounting Product Market include Property Solutions' Entrata Core.

21.　　Historically, Yardi allowed several different hosting options for its software and databases, including the option for clients to host their own databases ("self-hosted"), use third-party hosting companies, or use Yardi's hosting services ("Yardi-hosted").

**C.**      **Property Solutions and Yardi's Initial "Friendly" Collaborations**

22.      As early as 2004, Yardi began working with Property Solutions to aid in the

development of an integration between Property Solutions' ResidentPay online payment system

(one of Property Solutions' Point Solution Products) and Yardi's various property management

accounting software products, including Voyager.  Yardi actively facilitated Property Solutions'

development and construction of Property Solutions' custom integration utility by sending

Property Solutions a copy of its Genesis software and database, allowing Property Solutions to

access the Voyager software and database, troubleshooting the utility, and providing support to

mutual customers using the utility.

23.      After receiving the Genesis software and access to the Voyager software and

database, Property Solutions began to work directly and collaborate with Yardi developers on

two types of integrations with Yardi's databases:  (a) self-hosted integrations, in which the

Property Solutions-designed interface tool would be located on the customer's server with the

customer's Yardi database; and (b) Yardi-hosted integrations, in which the Property Solutions-

designed interface tool would be installed on Yardi's servers, which also hosted the customer's

database.

24.      In 2006, Property Solutions successfully deployed its first self-hosted Yardi

integration, which provided the customer with the ability to process payments through Property

Solutions' website interface and push data from Property Solutions' databases to the client's

Yardi database.  At about the same time, Yardi began to market and sell "plug-in" or partial

products to compete with Property Solutions' Point Solution Products.  Even still, Yardi

continued for a time to assist Property Solutions in developing its custom integrations.  Later in

2006, Property Solutions deployed a beta version of this integration for another mutual customer of Yardi and Property Solutions.  Property Solutions also contacted Yardi, proposing that it become one of Yardi's third-party integrators in the Yardi-hosted environment.  At Yardi's request, Property Solutions sent Yardi contact information for its key developers, corporate information, and several proposals related to the creation of the integration.

25.     Yardi also encouraged third-party vendors to develop software that communicated with Yardi's database through a Yardi-designed standard interface.  But the Yardi standard interface was incapable of facilitating the functionality requested by Property Solutions' customers.  Yardi continued to facilitate Property Solutions' development of its products and told Property Solutions that it could continue to design its own custom interfaces, and Property Solutions did so.  Property Solutions' custom interface tools (which allow its Point Solutions Products to communicate with customers' Yardi databases) provided several advantages over Yardi's standard interface, including the complex integration of payments, balance inquiries, maintenance requests, and unit availability requests.  Property Solutions' custom interfaces also allowed information to flow through in real time, rather than updated in a nightly feed.  Property Solutions' interface tools would lose substantial functionality if forced to communicate with a Yardi accounting database through the Yardi standard interface.

26.     In the early years of their relationship, Yardi encouraged Property Solutions to develop high quality custom integrations with Yardi's software databases, and it even provided Property Solutions with the technical details that allowed Property Solutions to complete those integrations.  Additionally, Yardi facilitated Property Solutions' receipt both of a license file to

access the Voyager application and a copy of the Yardi database from a potential mutual customer, in order to enhance the Property Solutions custom integration.

27.     As Property Solutions worked to perfect its custom interfaces with Yardi's databases, Yardi developers provided extensive technical support, including information necessary to allow Property Solutions' software to "talk" to Yardi's databases.  Yardi personnel volunteered information about the design of Yardi's software and database, the configuration of the Yardi database tables, and the queries that Yardi's software used to interact with those tables. In March 2007, Property Solutions developers began working with Yardi developers on testing and troubleshooting Property Solutions' Yardi-hosted integration.

28.     As part of the parties' ongoing business relationship, in 2007 Property Solutions sent Yardi a copy of the source code used in Property Solutions' integration utility.  Upon information and belief, Yardi reviewed that source code, conducted a security review of the software, and ultimately approved Property Solutions' custom integration for installation on its servers for its Yardi-hosted clients.

29.     In early 2008, Yardi informed Property Solutions that it was an "approved integration partner" for both self-hosted and Yardi-hosted customers.

30.     Yardi specifically enabled and facilitated Property Solutions' development of custom integrations because those products enhanced the value and attractiveness of Yardi's accounting software products, and Yardi profited from its customers' adoption of Property Solutions' software as a custom interface to be used with Yardi's software databases.  On information and belief, by March 2008, Yardi was annually charging its customers the greater of $2,500 or $250 per property to use Property Solutions' integration utility, if the utility was

hosted on Yardi's servers.  For many property management companies with hundreds of properties, a per-property charge of $250 amounted to substantial annual payments to Yardi.

31.     In addition, Property Solutions often referred customers interested in the features and convenience of its Point Solution Products to Yardi, and recommended that they use Yardi's property management accounting software.  Similarly, Yardi referred customers to Property Solutions' Point Solution Products.  Property Solutions' Point Solution Products provided a great benefit to Yardi and made Yardi's accounting products more attractive and competitive because they allowed Yardi to offer its customers access to features not available in Yardi's own software, but offered by other software vendors such as Property Solutions.

32.     Soon Property Solutions began contracting with an increasing number of customers interested in Property Solutions' Point Solution Products.  For example, in September 2008 Property Solutions entered a license agreement to create custom integrations for its Point Solution Products with Yardi's then-largest customer.

33.     In December 2008 (shortly after Property Solutions had displaced a number of significant customers from Yardi's portal products), Yardi wrote to vendors, informing them that they needed to be "SAS70" compliant to continue interfacing with Yardi property management accounting software products.  SAS70 (now known as SSAE 16) is an auditing standard used to verify that service providers have adequate controls and safeguards in place when they host or process data belonging to their customers.  Yardi also communicated this information to several customers, advising of the new restrictions Yardi would be placing on its third-party vendors. To assure Yardi that Property Solutions' Point Solution Products were indeed SAS70 compliant, and to avoid any disruptions for their mutual customers, Property Solutions executed a letter

agreement with Yardi in early 2009.  That letter provided Property Solutions' confirmation of SAS70 compliance documentation, including the specifics of how Property Solutions integrates with Yardi's database.

### D.       Yardi's Unlawful Efforts to Stifle Competition

34.       Despite their longstanding and mutually beneficial business relationship, Yardi began to fear the growing success of Property Solutions' Point Solution Products, which illuminated to customers and the market as a whole the deficiencies in Yardi's own interface software products (i.e., Yardi's Plug-In Products) and allowed Property Solutions to create strong relationships with Yardi's property management customers.

#### *False Messages to Customers and Yardi's Suit Against Another Software Company*

35.       Although Yardi had previously and for several years been more than happy to refer its property management accounting software customers to Property Solutions' Point Solution Products, in the face of Property Solutions' burgeoning successes, Yardi changed course and began sponsoring false messages that its base property management accounting software (Voyager) could not functionally integrate with Property Solutions' Point Solution Products.  Yardi also continued to falsely accuse Property Solutions of engaging in SQL injection (thereby creating security vulnerabilities) and not being SAS-70 compliant.  Yardi communicated this false and misleading information to scores of both current and prospective customers of Property Solutions.  To demonstrate the falsity of Yardi's communications, Property Solutions offered to allow either Yardi's or customers' auditors to come onsite to Property Solutions to review its custom integration processes, but Yardi declined.

36.     Property Solutions was not the only competitor to face Yardi's wrath and litigation threats. Indeed, on January 24, 2011, Yardi filed a copyright infringement lawsuit against another competing provider of property management accounting software and associated plug-in or portal products. After that lawsuit was filed, Yardi held a conference call with its third-party vendors of integration software, including Property Solutions, to assure them that, despite the lawsuit, Yardi still remained supportive of collaboration and integration.

37.     In the summer of 2012, Property Solutions announced its launch of Entrata Core. In reaction, and despite previous assurances of collaboration, Yardi—out of fear of Property Solutions' direct competitive threat to Voyager with Entrata Core—began ramping up its efforts to discourage its customers from using Property Solutions' Point Solution Products, falsely informing customers that Property Solutions' interfaces with Yardi's software presented security problems and that the Property Solutions' interfaces did not meet Yardi standards. In addition, Yardi began implementing tactics designed to prevent its customers from freely integrating with all third-party vendors, including Property Solutions.

38.     Several mutual Yardi and Property Solutions customers became concerned that Yardi would be successful in its efforts to lock out Property Solutions and render the Property Solutions integrations useless. At those customers' insistence, Yardi entered into agreements with several of them, assuring the customers that it would notify them prior to any discontinuance of the use of Property Solutions' custom interface. On at least one occasion, Yardi assured 60-days' notice prior to the discontinuance of use of Property Solutions' custom integration.

39. In August 2012, Yardi wrote to its customers indicating that it would no longer support Property Solutions' custom interfaces, falsely claiming that Property Solutions' Point Solution Products created security issues for customers' data, and encouraging customers to use Yardi's products and standard interfaces instead.

40. Also in 2012 Yardi began communicating that it would start charging vendors, including Property Solutions, $25,000 to use each of seven Yardi standard interfaces (for a total of $175,000 per year, per vendor, for access to all of Yardi's standard interfaces).

41. Property Solutions and Yardi began negotiating a "Yardi API Agreement" in December 2012. Property Solutions also provided Yardi its own "Property Solutions API Agreement" to allow Yardi to integrate with Property Solutions' Entrata Core. Property Solutions provided Yardi a "gap analysis" that identified the additional functionality Property Solutions' custom interface provides over Yardi's standard interface. The analysis was provided to help ensure customers would not lose functionality as a result of a move to a standard interface. Negotiations between the parties continued for some time, but ceased in February of 2014 when Yardi notified Property Solutions that negotiations were at an end.

### Yardi's Lawsuit against Property Solutions

42. On October 21, 2013, Yardi commenced a lawsuit against Property Solutions in the United States District Court for the Central District of California (the "California Lawsuit"), alleging various claims against Property Solutions, including copyright infringement and trade secret misappropriation, arising from Property Solutions' collaboration with Yardi over the years to develop a suite of Yardi-integrated interface products. From the commencement of the California Lawsuit through the present, Yardi has used the California Lawsuit as a marketing

vehicle, even going so far as to dedicate a portion of the Yardi website

(http://www.yardi.com/news/yardi-lawsuit-against-property-solutions-international/) to

aggregated Yardi press releases and links to legal documents relating to the California Lawsuit.

Property Solutions believes that the California Lawsuit was filed against it by Yardi to injure

Property Solutions and as weapon to impair Property Solutions' ability to fairly compete with

Yardi.

43.    When Yardi filed the California Lawsuit, it informed existing and potential

customers that it would continue to work with Property Solutions to support their mutual

customers.  But contrary to Yardi's false assurances, and although the two companies have over

230 joint customers, Yardi began putting out the message that Property Solutions was not an

approved vendor and employing other tactics to dissuade customers from moving to or staying

with Property Solutions.  These tactics were part of a scheme by Yardi to coerce Property

Solutions' current and prospective clients to use Yardi products rather than Property Solutions'

products.

44.    When questioned about these tactics by mutual customers Yardi's typical

response has been to tell them that because of the California Lawsuit (which it strategically

commenced) Yardi cannot confirm whether it will continue to permit Property Solutions' Point

Solution Products to interface with Yardi's accounting software products, and that there is no

guarantee that custom integrations will remain supported for Voyager versions 6.0 or 7S.

45.    Yardi has also told customers that Property Solutions' custom integrations do not

function with Voyager version 7S, which is false and inaccurate, in order to (a) frighten and

persuade customers, on the basis of demonstrably false information, to move off of Property

Solutions' Point Solution Products and onto Yardi's Rent Cafe, or (b) frighten and persuade

potential customers, on the basis of demonstrably false information, not to purchase Property

Solutions' Point Solution Products if they are considering doing so.

### *Yardi's Further False Assertions and Acts*
### *Aimed at Injuring Property Solutions*

46.     On or about January 6, 2015, Property Solutions received requests for technical

support from several Yardi-hosted customers.  Because it is not uncommon for small groups of

Yardi-hosted clients to be down for a small amount of time, Property Solutions was not initially

overly concerned.  But upon investigation, Property Solutions discovered that Yardi's servers

were not actually down, but instead Yardi had rendered Property Solutions' custom integration

utility inaccessible, thereby cutting off their customers' access to Property Solutions' Point

Solution Products.  In particular, a specific file within the integration utility (i.e., the

"diagnostics.asmx" file) had gone missing, been renamed, or was otherwise inaccessible to

Property Solutions.

47.     Property Solutions is informed and believes that Yardi purposefully removed,

renamed, or disabled the diagnostics.asmx file located within Property Solutions custom

interface files—thereby disabling the transfer of data between Voyager and Property Solutions'

Point Solution Products.

48.     Yardi's disabling of customers' ability to access their data through the interface

with Point Solution Products so upset customers that they complained to Yardi, causing it to at

least temporarily restore at least some of the functionality of the Point Solution Products.

49.     But that temporary respite did not last.  Instead, sometime in the early morning

hours of January 14, 2015, and without prior notice to Property Solutions or to the joint

customers of Yardi and Property Solutions, Yardi again purposefully removed, renamed, or disabled the diagnostics.asmx file in Property Solutions' integration utility.

50.     The next morning, on January 14, 2015, Yardi contacted Property Solutions by e-mail, and then separately contacted all of Property Solutions and Yardi's mutual customers by e-mail, with an announcement confirming that Yardi had taken affirmative steps to block portions of Property Solutions' integration utility's ability to function properly  (the "Yardi January 14 Announcement").

51.     The Yardi January 14 Announcement was sent by Yardi's Vice President and General Counsel, Arnold Brier, with the subject line "Notice of Action by Yardi to Resolve Two Custom Interface Cybersecurity Vulnerabilities."  The full text of the Yardi January 14 Announcement is set forth below:

> Yardi regularly monitors and assesses potential security vulnerabilities as part of our cloud operations.  We are taking steps immediately to close two cybersecurity vulnerabilities that are present in some third party vendor custom interface applications:  (1) SQL injection; and (2) the ability to arbitrarily modify software code in the Yardi cloud.  These changes will help improve database security by reducing the potential for a malicious cyberattack.
>
> Yardi's standard interface application is used by the vast majority of third party vendors for the exchange of information between a client's database and the third party vendor's software.  Our standard interface application, which is developed, maintained and supported by a dedicated Yardi team, does not allow SQL injection or the arbitrary modification of code in the Yardi cloud.  A much smaller group of third party vendors uses its own custom interface applications to exchange data between a client's Voyager database and the vendor's software.  Custom interface applications are not written, maintained or supported by Yardi.
>
> **Effective immediately Yardi will take steps to block any known instances of SQL injection in any custom interface application, and will disable the ability to arbitrarily modify custom interface application software code in any Yardi cloud environment (including**

**making modifications to dynamic-link library (.dll) files).**  [Emphasis in original.]  These changes apply to all custom interface applications in the Yardi cloud—**including the Property Solutions custom interface, which is known to use SQL injection and to make .dll modifications without notice**.  [Emphasis supplied.]  We do not believe this action will impact the core functionality of any third party custom interface, but closing these security vulnerabilities will help increase cybersecurity and the protection of your database.

If you do experience any technical issues, please contact your third party vendor.  A Yardi team is also standing by to do what it can to help and can be reached directly by calling (855) 219-7147.  If you have any other questions, please contact me at (805) 699-2040 x1769 or Arnold.Brier@Yardi.com.  We value you as a Yardi client and thank you for your continued support.

Sincerely,

Arnold Brier
Vice President and General Counsel

52.     Separately, also on January 14, 2015, Mr. Brier contacted Property Solutions'

Chief Legal Counsel, Jared Hunsaker, with an e-mail confirming Yardi's intent to block Property

Solutions' custom interface software.  Mr. Brier's e-mail is set forth below in its entirety:

Please note that effective immediately Yardi will take steps to block any known instances in any custom interface applications that use SQL injection, and will disable the ability to arbitrarily modify software code in any Yardi-cloud environment through a custom interface.

Going forward, Yardi will also require confirmation from all custom interface developers and operators that they do not use SQL injection in any custom interface application in the Yardi cloud. These changes are intended to improve database security by reducing the possibility for a malicious cyberattack through these potential vulnerabilities.

Please contact me if you have any questions.

Best regards,

Arnie

53.     As Yardi well knows, and no doubt intended, the term "SQL injection" is laden with negative connotations.  It is ubiquitously used in the industry to refer to a code injection technique used to attack data-driven applications, in which *malicious* SQL statements are inserted into an entry field of an SQL database for execution (e.g., to dump the database contents to the attacker).  Property Solutions *does not* engage in SQL injection, as that term is roundly understood by the industry.  And Property Solutions has *never* used its integration with Voyager or any Yardi software to replace, tamper with, or alter the functionality of Voyager .dll files.  However, because the Property Solutions' custom interface software is (for its cloud-based software-as-a-service ["SaaS"] customers) housed on Yardi servers, it must, in order to function at all, access Yardi's SQL databases from time to time.

54.     The fallout from Yardi's actions against Property Solutions' Point Solution Products and from the propagation of the Yardi January 14 Announcement was immediate and far-reaching for Property Solutions.  That morning, and for several days thereafter, Property Solutions was inundated with fearful e-mails from its customers and prospects, surrounding not only the loss of function in their products, but also inquiring once again about Yardi's false allegations that Property Solutions makes use of SQL injections.

55.     Despite the severity of its actions and market dominance, Yardi was not entirely immune from backlash.  For example, one mutual customer, having received the Yardi January 14 Announcement, contacted Yardi to advise it that its actions appeared to be a calculated effort to block Property Solutions' integration specifically, and thus constituted a breach of the notice provision of its contract (described at ¶ 38, above).  The customer further demanded that if Yardi's actions were not in fact deliberately targeting Property Solutions, then Property

Solutions' custom interface software should be "whitelisted"[1] to allow full functionality and utility.

56.     On January 15, 2015, Property Solutions notified Yardi of its concerns over Yardi's actions and the Yardi January 14 Announcement by means of a "cease and desist" letter from Property Solutions' Mr. Hunsaker to Yardi's Mr. Brier ("Property Solutions' January 15 Notice Letter"), the contents of which are as follows:

> Re:    Yardi's Anti-Competitive Conduct and False Statements about Property Solutions
>
> Dear Mr. Brier:
>
> Yesterday morning, Property Solutions learned that Yardi disabled elements of Property Solutions' integrations, and those integration elements need to interact with the Voyager software.  Property Solutions also learned that Yardi, through public written communication, is telling mutual customers that the integrations engage in SQL Injection and make modifications to Yardi's or others dynamically linked libraries (.dll's).
>
> Yardi's reckless decision to partially cripple the integrations' access to Voyager without any notice to Property Solutions and Yardi's mutual customers is causing those customers, and Property Solutions, serious harm and disruption. For example, Yardi has impeded mutual customers' ability to track work orders or manage leads in the manner which they need to operate their businesses effectively.
>
> We understand that many of Yardi and Property Solutions' mutual customers were concerned about such an action and asked for their license agreements to include language which guaranteed their ability to use Property Solutions' custom integrations, or at least notification before any access was terminated.   We believe that Yardi's reckless decision to disable Property Solutions access is a breach of those agreements.  Yardi's unilateral decision to partially disable Property Solutions' integration access to Voyager without notice also constitutes actionable

---

[1] A "whitelist" is a list of computer software applications that have been granted permission by the user or an administrator. When an application tries to execute, it is automatically checked against the list and, if found, allowed to run.

anticompetitive conduct. We demand that you immediately and publicly restore the integrations' prior functionality. This is critical, as it is causing problems with Property Solutions continuing obligations to its customers in respect to the ability to patch and update security vulnerabilities in its software.

Yardi's assertion that Property Solutions engages in "SQL Injection" is demonstrably false and defamatory. The term "SQL Injection" refers to a security vulnerability in which malicious SQL statements are inserted into a data-entry field for execution. Property Solutions' products, like Yardi Voyager and most database applications use the SQL language to connect to a database, but they do not engage in, or allow, SQL Injection. Your statement implies that Property Solutions is engaging in malicious, reckless, or even possibly criminal behavior. We therefore demand that you immediately and publicly retract your allegation that Property Solutions engages in SQL Injection.

Yardi also insinuated in their public communication that Property Solutions modifies Yardi or others .dll files. This language was vague and infers that Property Solutions has modified Yardi's .dll files, which is demonstrably false and defamatory. Property Solutions has never modified Yardi's .dll files. Again, we demand that you immediately and publicly withdraw your allegation and clarify that Property Solutions does not modify Yardi's .dll files.

Yardi's decision to use its customers as pawns in its ongoing dispute with Property Solutions is causing them significant harm. Property Solutions will take whatever legal actions it deems necessary to ensure that its customers can operate their business without interference.

Sincerely,

Jared Hunsaker

### *Yardi's Acts of Coercion against Property Solutions*

57.     Not long after Yardi's improper actions and the propagation of the Yardi January 14 Announcement, word of what Yardi had done reached other competitors. Property Solutions received notice from several of its customers that other purveyors of software designed to interface with Yardi's property management software had been in contact with them, advising of

rumors that Property Solutions would no longer be a viable choice, and offering their competing

services to fill the upcoming void.  At least one such contact supported his overture by

referencing, albeit incorrectly, the California Lawsuit.

58.     Yardi's actions came without warning and stood to cause substantial damage to

Property Solutions.  Thus, Property Solutions was forced to take immediate measures to comply

with Yardi's demands in an effort to restore functionality for its customers.  These efforts have

given rise to new customer complaints and functionality issues.  Some of the problems caused by

Yardi's unilateral actions include impacting Property Solutions' ability to update the custom

integration utility files and deploy timely fixes to any integration utility issues should they occur,

and preventing access to interface logs, which protect customers against cyber-attacks and are

otherwise important from a security standpoint.

59.     Without access to write to the file system, the Property Solutions integration

utility cannot provide the same level of functionality or service, and Property Solutions' ability

to resolve issues in the timely manner that its clients have come to expect has been limited.

60.     After Yardi unilaterally disabled portions of Property Solutions' custom

integration, Yardi sent a change management form and demanded that Property Solutions

execute the form for any customer upgrading the custom integration.  Yardi's CEO, Anant Yardi,

sent an e-mail to Property Solutions' CEO, Dave Bateman, claiming that several clients had

contacted Yardi about their issues and concerns about the custom integration, including problems

with e-mails not going to residents when work order requests are closed, as well as problems

with processing applications.  Mr. Yardi copied four of the parties' largest mutual customers'

technical contacts on the e-mail thread, and mentioned that Property Solutions' Chief Legal Counsel, Mr. Hunsaker, had proposed modifications to the change management form.

61.     Because of the immense pressure and coercion that Yardi exerted on Property Solutions, its CEO, Mr. Bateman, reluctantly agreed to sign the new form notwithstanding the fact that the language in the form clearly misrepresented the issues.  To this day, Yardi continues to seek to force Property Solutions to enter into new and additional verbiage in another change management form that is both inaccurate and injurious to Property Solutions.  While agreeing to the form has alleviated the immediate problems with the custom integration, it has slowed down the process immensely, thereby furthering Yardi's obstructionist efforts.

62.     As a result of Yardi's anti-competitive behavior and publication of false and misleading statements about Property Solutions and its Point Solution Products, a number of Property Solutions' existing customers, have either terminated or threatened to terminate certain services and move to Yardi products, or, in the case of prospective customers have been too hesitant and unsure of the continued ability of Property Solutions and Yardi to maintain a functional integration as to use Property Solutions' Point Solution Products.  As a consequence of Yardi's calculated anti-competitive conduct, Property Solutions has been harmed and continues to be harmed.  So too both competition and consumers in the Accounting Product Market and the market for specialized integrated or plug-in products for property management accounting software have been harmed.

     E.      **Pertinent Markets and Yardi's Market Power**

63.     As outlined above, there are separate and distinct product markets for (a) *core* property management *accounting* software products for use in the multi-family housing industry

in the United States by "enterprise"-sized property management companies (such as Yardi's

Voyager product), which typically manage at least 1,000 units ("Core Accounting Products" or

the "Accounting Product Market"), and (b) "plug-in" or portal special purpose software products

(such as Property Solutions' Point Solution Products) that integrate or interface with the core

property management accounting software products, such as Voyager ("Integration Products" or

the "Integration Product Market").

64.     Core Accounting Products constitute a separate relevant product market because

those products provide unique, specialized functionality and tools for property management

customers.  There is differentiated and specific demand for the products in the Accounting

Product Market that cannot be satisfied by other types of software or other accounting software

products because such products do not offer the features and functionality demanded by property

management companies.

65.     Upon information and belief, while a number of other companies, including

Property Solutions, have developed and sell Core Accounting Products, Yardi has long held and

continues to hold a dominant and controlling position in the Accounting Product Market, with a

market share at least as high as 60%.

66.     The "plug-in" or portal special purpose software products in the Integration

Product Market constitute a separate relevant product market because those products provide

specialized functionality to property management customers—distinct from the functionality

provided by products in the related Accounting Product Market.  Core Accounting Products are

not a substitute for Integration Products because those two types of software products provide

very different functionality to property management customers.  Moreover, other types of

software products or services are not adequate substitutes for Integration Products because those other products do not offer the same functionality and property management customers cannot use such products as a replacement for Integration Products.

67.     Yardi and Property Solutions, as well as other companies, compete in the Integration Product Market.  Though Yardi does not yet have a dominant position in this market, Yardi's unfair, unlawful, and anti-competitive conduct threatens, and presents a dangerous likelihood that Yardi will succeed in acquiring a dominant market share in the Integration Product Market.

### IV.     CLAIMS FOR RELIEF

#### FIRST CLAIM
#### (*Injurious Falsehoods*)

68.     By this reference, Property Solutions incorporates each of the foregoing allegations.

69.     Yardi's assertions in the Yardi January 14 Announcement that Property Solutions engages in SQL injection and arbitrary alteration of Yardi .dll files in the Yardi Voyager code are false.

70.     Each of the injurious falsehoods described above, i.e., those propagated by the Yardi January 14 Announcement as well as those Yardi disseminated through other means, was and is calculated to prevent property owners, managers, and users of property management software from dealing with Property Solutions or using Property Solutions software; and each interferes, to Property Solutions' disadvantage and detriment, with Property Solutions' relations with its customers—both current and prospective.

71.     Yardi intends, or recognizes or should recognize, that its publication of each of the injurious falsehoods described herein is likely to harm Property Solutions' pecuniary interests.

72.     Yardi has acted in bad faith and with malice in publishing the injurious falsehoods described above.

73.     Yardi knows that each of the injurious falsehoods described above is false, or at least it has acted in reckless disregard of the falsity of its communications.

74.     Property Solutions has suffered and will continue to suffer irreparable harm, which may only partially be abated, unless and until Yardi is enjoined from publishing or otherwise disseminating injurious falsehoods, including the false implications and representations described above.

### SECOND CLAIM
#### (*False Advertising*)

75.     By this reference, Property Solutions incorporates each of the foregoing allegations.

76.     Yardi, in interstate commerce and in commercial promotion of its Voyager and Plug-In software products, has made materially false or misleading representations of fact, including but not limited to those found in the Yardi January 14 Announcement accusing Property Solutions of engaging in SQL injection and alteration of .dll files in the Voyager code, as well as stating that newer versions of the Voyager application do not integrate with Property Solutions' Point Solution Products.

77.     The Yardi January 14 Announcement and Yardi's other false and misleading communications to the industry constitute commercial speech, in that they were made by Yardi,

which offers a variety of software products that it markets as being competitive with those offered by Property Solutions, and is therefore in commercial competition with Property Solutions. The Yardi January 14 Announcement and Yardi's other false and defamatory communications to the industry were made for the purpose of influencing consumers to stop using Property Solutions' Point Solution Products and Entrata software products, and to instead purchase and use Yardi's software products. The Yardi January 14 Announcement and Yardi's other false and misleading communications to the industry were disseminated to all or nearly all of the Yardi customers who were, at that time, using the Property Solutions Point Solution Products instead of Yardi's Plug-In Products.

78.     Yardi's false and misleading communications to the industry, including at least its statements in the Yardi January 14 Announcement asserting or implying that Property Solutions engages in SQL injection and modification of .dll files, constitute actionable false advertising under 15 U.S.C. § 1125(a)(1)(B) (section 43(a)(1)(B) of the Lanham Act).

79.     Yardi's false and misleading communications to the industry, including at least its statements in the Yardi January 14 Announcement asserting or implying that Property Solutions engages in SQL injection and modification of .dll files, were made by Yardi with malice based on actual knowledge of their falsity, or with reckless disregard for their truth or falsity.

80.     Property Solutions has suffered and will continue to suffer irreparable harm, which may only partially be abated once Yardi is enjoined from stating or implying that Property Solutions' custom Yardi interface engages in or allows SQL injection and/or alteration of .dll files in the Voyager code, and from otherwise disseminating false and misleading communications to the industry about Property Solutions and its products.

81.     By reason of the foregoing, Property Solutions is entitled to injunctive and monetary relief, including treble damages and attorneys' fees, pursuant to, at the least, sections 34, 35, and 43 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, and 1125.

## THIRD CLAIM
### (*Utah Deceptive Trade Practices*)

82.     By this reference, Property Solutions incorporates each of the foregoing allegations.

83.     By representing, in the course of its business, that Property Solutions' custom interface allows SQL injection and changes to .dll files, and that newer versions of the Voyager application do not integrate with Property Solutions' Point Solution Products, Yardi has engaged in deceptive trade practices under Utah Code § 13-11a-3(1), subdivision (e).

84.     By causing, in the course of its business, dissemination of the Yardi January 14 Announcement and the false statements contained therein, Yardi has disparaged the business and services of Property Solutions, and has thus engaged in deceptive trade practices under Utah Code § 13-11a-3(1), subdivision (h).

85.     By way of Property Solutions' January 15 Notice Letter, Yardi was afforded notice more than 10 days prior to the filing of this Complaint of the false nature of Yardi's representations that Property Solutions' custom interface allows SQL injection and changes to .dll files, and has received a demand by Property Solutions that Yardi take steps to cure the false representations.

86.     Despite notice of the foregoing, received more than 10 days prior to the filing of this Complaint, Yardi has failed to promulgate correction notices by the same media and with the same distribution and frequency as its deceptive advertising.

87.     By reason of the foregoing, Property Solutions is entitled to injunctive and monetary relief, including attorney's fees and an order requiring Yardi to promulgate corrective advertising, pursuant to the Utah Truth in Advertising Act.

**FOURTH CLAIM**
**(*Tortious Interference*)**

88.     By this reference, Property Solutions incorporates each of the foregoing allegations.

89.     Yardi has intentionally interfered with Property Solutions' existing and potential economic relations by directly contacting all or nearly all of Property Solutions' customers who use the Property Solutions custom interface.

90.     In doing so, by way of the Yardi January 14 Announcement and Yardi's other false and defamatory communications to the industry, Yardi has used improper means, including but not limited to intentionally, willfully, or recklessly making false representations that Property Solutions' custom interface allows SQL injection and changes to .dll files—to suggest that Property Solutions actively engages in both SQL injection and .dll modification.

91.     Yardi's actions in this regard have caused, and will continue to cause, injury to Property Solutions in that a growing number of its current customers have begun to question the long-term viability of the Property Solutions custom interface, as well as the ability of Property Solutions to work with Yardi in the future, and are thus considering moving away from Property Solutions' Point Solution Products and toward Yardi's Plug-In Products, or other competitors' software, instead.  Property Solutions' potential customers are being dissuaded for the same reason.

92.     Yardi's actions in this regard have caused, and will continue to cause, injury to Property Solutions in that vast amounts of employee time and effort have already been spent, and will continue to be spent, responding to customers concerned about Yardi's accusations, and reassuring customers of Property Solutions' long-term viability.

93.     Property Solutions has suffered, and will continue to suffer, irreparable harm unless and until Yardi is enjoined from tortiously interfering with Property Solutions' business and economic relations.

**FIFTH CLAIM**
**(*Monopolization and Attempted Monopolization*
*of the Accounting Product Market*)**

94.     By this reference, Property Solutions incorporates each of the foregoing allegations.

95.     Yardi and Property Solutions both provide Core Accounting Products and Integration Products used by property management customers in the multi-family housing industry.  On information and belief, Yardi's principal Core Accounting Product, its property management accounting software product Voyager, has in excess of a 60% share of the Accounting Product Market.  Further, on information and belief, Yardi has profitably charged prices above the competitive level in the Accounting Product Market for a sustained amount of time.  As a consequence of the foregoing, Yardi wields market power in the Accounting Product Market.

96.     Along with a dominant share of the Accounting Product Market, Yardi also yields market power because of the high costs and overhead a consumer will incur in order to migrate data and configure IT systems to switch to an alternative property management accounting

software provider. As a result of its hold on the Accounting Product Market, Yardi has the ability to control prices and exclude competition.

97.     Property Solutions offers a unique competitive threat to Yardi's dominance in the Accounting Product Market—and Yardi has acted aggressively and anticompetitively to extinguish that threat and preserve its monopoly power.  Property Solutions offers a competitive Core Accounting Product (Entrata Core).  But a high quality competitive Core Accounting Product may not be enough because of the complexity and migration costs for a property management customer to move away from Yardi.   Property Solutions' unique position stems from the widespread market acceptance of Property Solutions' Integration Products, and Property Solutions' ability therefore to offer customers a more seamless and risk-free transition away from Yardi.  Hence, Yardi's ongoing efforts to damage Property Solutions and impair the functionality of Property Solutions' Integration Products.

98.     As set forth above, Yardi continues to commit anticompetitive acts such as forcing its mutual customers into anticompetitive agreements through coercion and disseminating false statements.  As illustrated by Yardi's previous history of working collaboratively with Property Solutions for their mutual benefit and the benefit of their customers, Yardi's recent anticompetitive strategy lacks any legitimate business justification or purpose and Yardi's attempts to suggest otherwise only deepen Yardi's falsehoods.  Yardi's conduct does not improve its product, its operating efficiency, or its ability to compete on the merits of its Core Accounting Products.  To the contrary, Yardi is exercising its market power to prevent Property Solutions from competing on the merits.

99.     The conduct set forth above constitutes unreasonable and anti-competitive means by which Yardi has willfully acquired and is willfully maintaining its dominant market power in the Accounting Product Market, in violation of the Sherman Antitrust Act, 15 U.S.C. § 2.

100.    By reason of the foregoing, Property Solutions is entitled to injunctive and monetary relief, including treble damages and attorney fees, pursuant to 15 U.S.C. §§ 15 and 16.

### SIXTH CLAIM
#### (*Monopoly Leveraging and Attempted Monopolization of the Integration Product Market*)

101.    Yardi has exercised and abused its monopoly power in the Accounting Product Market for the purpose of acquiring and maintaining a monopoly, or attempting to do so, in the related Integration Product Market.

102.    As set forth above, Yardi has monopoly power in the Accounting Product Market. Yardi has begun requiring all of its new Core Accounting Product clients and pushing its existing Core Accounting Product clients to move to its new SaaS platform for the general purposes of stifling competition, controlling pricing, and forcing its customers, especially its mid-range to small customers to choose products only from its portfolio.  This action precludes or interferes with competition by third-party providers of Integration Products (including but not limited to Property Solutions) and therefore undermines competition across the market.  Yardi's conduct is a direct and calculated attempt to extend its dominance in the Accounting Product Market into the Integration Product Market.

103.    As explained above, Integration Products (including but not limited to Property Solutions' Point Products) enhance the value and marketability of Yardi's Core Accounting Product.  Yardi's own longstanding pattern of behavior and collaboration demonstrates the

benefits to Yardi of enabling Integration Products to work with Yardi's Core Accounting

Products.  Yardi's recent change of business practice and conduct therefore is economically

irrational in the short run, lacks any legitimate business justification, and is manifestly

anticompetitive as it serves only to foreclose competition on the merits.

106.    The combined strategy or spreading false information about competitors,

deliberatively interfering with the performance of competitive products, and coercing customers

to purchase Yardi's have an extremely strong anticompetitive effect on market competition.

Given Yardi's existing dominance in the Accounting Product Market and the perniciousness of

its anticompetitive conduct, there is a dangerous probably that Yardi will acquire monopoly

power in the Integration Product Market.

105.    The conduct set forth above constitutes unreasonable and anti-competitive means

by which Yardi is attempting to monopolize the Integration Product Market, in violation of the

Sherman Antitrust Act, 15 U.S.C. § 2.

106.    By reason of the foregoing, Property Solutions is entitled to injunctive and

monetary relief, including treble damages and attorney fees, pursuant to 15 U.S.C. §§ 15 and 26.

### SEVENTH CLAIM
### *(Unlawful Tying)*

107.    By this reference, Property Solutions incorporates each of the foregoing

allegations.

108.    Yardi's Voyager product (the tying product) and the corresponding Accounting

Product Market are separate and distinct products and markets from Yardi's Plug-In Products

(the tied products) and the corresponding market for Integration Products (the "Tied Product

Market").

109.     Yardi seeks to impose or coerce purchasers of its Voyager product (the tying product) to also purchase its Plug-In Products (the tied products) rather than Property Solutions' Point Solution Products, or seeks to prevent purchasers of its Voyager product from using Property Solutions' Point Solution Products.

110.     Yardi has sufficient economic power in the Accounting Product Market for its tying product, Voyager, to coerce at least some of its customers into purchasing its tied products (i.e., the Plug-In Products), or at least to preclude customers from purchasing Property Solutions' Point Solution Products.

111.     Property Solutions is informed and believes that when Yardi is marketing its Plug-In Products in head-to-head deals against Property Solutions' Point Solution Products, or in an effort to displace a Property Solutions' customer from Point Solution Products to Yardi's Plug-In Products, Yardi offers Plug-In Products for free.

112.     Yardi has entered into its contracts with Property Solutions' current and prospective customers in order to restrain interstate commerce within the Accounting Product and Tied Product Markets.

113.     Yardi's unlawful tying is economically irrational conduct in the short term, has no legitimate business rationale, and serves only to foreclose competition in the Integration Product Market.

114.     By reason of the foregoing, Yardi's contracts with its property management clients constitute agreements or combinations in restraint of trade, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 3 of the Clayton Act, 15 U.S.C. § 14.

115.     Yardi unlawful tying is *per se* unlawful because Yardi controls a dominant share of the Accounting Product Market and has market power in that market.  In addition, competition in the Tied Product Market has been and is appreciably restrained as a consequence of Yardi's conduct.

116.     Yardi's conduct has affected a not insubstantial amount of commerce.

117.     Property Solutions has been harmed as a consequence of Yardi's conduct.

118.     By reason of the foregoing, Property Solutions is entitled to injunctive and monetary relief, including treble damages and attorney fees, pursuant to 15 U.S.C. §§ 15 and 26.

### EIGHTH CLAIM
### (*Breach of Contract – Third Party Beneficiary*)

119.     By this reference, Property Solutions incorporates each of the foregoing allegations.

120.     Yardi has entered into contracts with Yardi-hosted customers that utilize the Property Solutions custom interface.  In those contracts, the mutual customers of Yardi and Property Solutions have signed riders that specify the Property Solutions' Point Solution Products by name, as well as the amounts the mutual customers will pay Yardi in order to use the custom integrations.  Additionally, other contracts between mutual customers of Property Solutions and Yardi contain provisions that require Yardi to provide the mutual customers with a 60-day notice if Yardi terminates the Property Solutions custom interface, and with language that represents Yardi will continue to allow the customers' use of Property Solutions' custom integrations until the standard integration is coded, tested and ready to be deployed to mutual customers.

121.    Property Solutions is a third-party beneficiary under these riders and other agreements described above.

122.    Property Solutions provided the required services throughout the duration of the contracts until on or about January 6, 2015, when Yardi disabled portions of Property Solutions' custom integration to the point of terminating portions of the contracted for services.

123.    Yardi did not provide mutual customers with the required 60-day notice prior to effectively terminating portions of the Property Solutions services, nor did Yardi continue to allow the use of those portions of the custom integration, as contracted for.

124.    Yardi's unilateral actions of disabling portions of the Property Solutions custom integration service from mutual customers caused damage to Property Solutions.

125.    Yardi's failure to provide the requisite 60-day notice also caused damage to Property Solutions because mutual customers have become dissatisfied with Property Solutions.

## V.    PRAYER FOR RELIEF

WHEREFORE, Property Solutions prays that judgment be entered in its favor on each of the foregoing claims for relief, and that:

A.    Yardi be preliminarily and permanently enjoin from :

(1)    Publishing or otherwise discriminating falsehoods concerning Property Solutions, such as that Property Solutions engages in SQL injection, arbitrarily alters Yardi .dll files in the Voyager code, and that newer versions of Voyager do not integrate with Property Solutions' Point Solution Products; and

(2)     Tortuously interfering with Property Solutions' business and economic relations;

B.     Yardi be required to promulgate corrective advertising regarding its false and misleading claims that Property Solutions engages in SQL injection, changes .dll files, and that new versions of the Voyager applications do not integrate with Property Solutions' Point Solutions Products, pursuant to the Utah Truth in Advertising Act;

C.     Award damages to Property Solutions (including Yardi's profits) in an amount to be proven at trial, trebled pursuant to 15 U.S.C. §§ 15(a) and 1117(a)

D.     Award Property Solutions its attorneys' fees, pursuant to at least 15 U.S.C. §§ 15(a) and 1117(a), and Utah Code § 13-11a-4(c);

E.     Award Property Solutions its costs;

F.     Award Property Solutions prejudgment interest, as applicable; and

G.     Grant Property Solutions such other and further relief as is just.

## JURY DEMAND

Property Solutions hereby demands TRIAL BY JURY of all claims and issues presented in this Action so triable.

Dated:  February 12, 2015

Respectfully submitted,

Sterling A. Brennan
R. Parrish Freeman
MASCHOFF BRENNAN LAYCOCK
   GILMORE ISRAELSEN & WRIGHT PLLC

Michael A. Jacobs
Eric M. Acker
Jeffrey A. Jaeckel
MORRISON & FOERSTER LLP

By: */s/ Sterling A. Brennan*
      Sterling A. Brennan
Attorneys for Plaintiff PROPERTY SOLUTIONS
INTERNATIONAL, INC.