Sterling A. Brennan (Utah State Bar No. 10060; E-mail: sbrennan@mabr.com)
R. Parrish Freeman (Utah State Bar No. 07529; E-mail: pfreeman@mabr.com)
MASCHOFF BRENNAN LAYCOCK GILMORE ISRAELSEN & WRIGHT PLLC
201 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone:   (435) 252-1360
Facsimile:   (435) 252-1361

Michael A. Jacobs (*Pro Hac Vice*; E-mail: MJacobs@mofo.com)
Eric M. Acker (*Pro Hac Vice*; E-mail: EAcker@mofo.com)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:   (415) 268-7000
Facsimile:   (415) 268-7522

Jeffrey A. Jaeckel (*Pro Hac Vice*; E-mail: JJaeckel@mofo.com)
Andrew L. Meyer (*Pro Hac Vice*; E-mail:  AMeyer@mofo.com)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue NW, Suite 6000
Washington, D.C.  20006-1888
Telephone:   (202) 887-1500
Facsimile:   (202) 887-0763

Attorneys for Plaintiff ENTRATA, INC. f/k/a PROPERTY SOLUTIONS INTERNATIONAL, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| ENTRATA, INC., f/k/a PROPERTY SOLUTIONS INTERNATIONAL, INC., a Delaware corporation, | Civil Action No. 2:15-CV-00102-CW-PMW |
| Plaintiff, | **PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** |
| vs. | |
| YARDI SYSTEMS, INC., a California corporation, | HON. CLARK WADDOUPS, DISTRICT JUDGE |
| Defendant. | HON. PAUL M. WARNER, MAGISTRATE JUDGE |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ....................................................................................................1

II.     ARGUMENT .........................................................................................................2

      A.      Principles of Justice Require Granting Entrata Leave to Amend ............................3

      B.      Upon Filing, the Amended Complaint Will Replace the Original
           Complaint...............................................................................................................4

      C.      The Amended Complaint Asserts Proper Claims Supported by Detailed
           Allegations of Fact..................................................................................................4

            1.      The Amended Complaint Properly Alleges Monopolization and
                 Attempted Monopolization of the Accounting Product Market .................6

            2.      The Amended Complaint Properly Alleges Attempted
                 Monopolization of the Integration Product Market ..................................10

            3.      The Amended Complaint Properly Alleges Unlawful Tying ...................12

            4.      The Amended Complaint Properly Alleges Monopoly Leveraging..........14

      D.      Entrata's Claim for Breach of Contract Is Timely and Not Prejudicial................14

III.    CONCLUSION....................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abraham v. Intermountain Health Care, Inc.*, 461 F.3d 1249 (10th Cir. 2006) ............................ 13

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) .................................... 8

*Atiya v. Salt Lake County*, 988 F.2d 1013 (10th Cir. 1993) ........................................................ 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 3, 4, 5

*Bell v. Fur Breeders Agric. Coop.*, 3 F. Supp. 2d 1241 (D. Utah 1998) ...................................... 5

*Bylin v. Billings*, 568 F.3d 1224 (10th Cir. 2009) ...................................................................... 2

*Caldera, Inc. v. Microsoft Corp.*, 72 F. Supp. 2d 1295 (D. Utah 1999) ...................................... 11

*Caldera, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 1244 (D. Utah 1999) .................................... 7, 8

*Christou v. Beatport LLC*, 849 F. Supp. 2d 1055 (D. Colo. 2012) ............................................ 13

*ClearOne Commc'ns, Inc. v. Chiang*, No. 2:07cv00037TC,
    2007 WL 2572380 (D. Utah Sept. 5, 2007) ...................................................................... 3

*Erickson v. Pardus*, 551 U.S. 89 (2007) ...................................................................................... 5

*Flying J, Inc. v. TA Operating Corp.*, No. 1:06-CV-30-TC,
    2007 WL 4165749 (D. Utah, Nov. 20, 2007) .................................................................... 5

*Foman v. Davis*, 371 U.S. 178 (1962) ........................................................................................ 2

*Fullerton v. Maynard*, 943 F.2d 57, 1991 WL 166400 (10th Cir. 1991) .................................... 4

*Hear-Wear Techs., LLC v. Oticon, Inc.*, No. 07-CV-0212-CVE-SAJ,
    2007 WL 4379714 (N.D. Okla. Dec. 12, 2007) ................................................................ 3

*Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738 (1976) ...................................................... 5

*In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*,
    No. 09-ML-2048-C, 2011 WL 6826813 (W.D. Okla. Dec. 28, 2011) ................................ 12

*In re Urethane Antitrust Litig.*, 409 F. Supp. 2d 1275 (D. Kan. 2006) ...................................... 6

*Instructional Sys. Dev. Corp. v. Aetna Cas. & Sur. Co.*, 817 F.2d 639 (10th Cir. 1987) ............ 7

*Kelley v. Crosfield Catalysts*, 135 F.3d 1202 (7th Cir. 1998)........................................4

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114 (10th Cir. 2014)..................6

*Mink v. Suthers*, 482 F.3d 1244 (10th Cir. 2007) ........................................4

*Minter v. Prime Equip. Co.*, 451 F.3d 1196 (D. Utah 2006) ........................................2, 3

*Mountain View Pharm. v. Abbott Labs.*, 630 F.2d 1383 (10th Cir. 1980)................................5, 6

*Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal
  & Prof'l Publ'ns, Inc.*, 63 F.3d 1540 (10th Cir. 1995) ............................................7, 9, 11, 12

*Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064 (10th Cir. 2013) ....................................8

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821 (7th Cir. 1978)...............................13

*Philips Elecs. N. Am. Corp. v. BC Tech., Inc.*, No. 2:08-cv-639,
  2009 WL 2381333 (D. Utah, Aug. 3, 2009) ........................................5

*Shoppin' Bag of Pueblo, Inc. v. Dillon Cos., Inc.*, 783 F.2d 159 (10th Cir. 1986)......................11

*Suture Express, Inc. v. Cardinal Health 200, LLC*, 963 F. Supp. 2d 1212 (D. Kan. 2013) ...........9

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ........................................5

*Wade v. Gaither*, 623 F. Supp. 2d 1277 (D. Utah 2009) ........................................2

## STATUTES, RULES AND REGULATIONS

15 U.S.C. § 1 (Section 1 of the Sherman Act)........................................7

15 U.S.C. § 2 (Section 2 of the Sherman Act)........................................7, 8, 13

Fed. R. Civ. P. 15........................................2

  Fed. R. Civ. P. 15(a)(2)........................................2

Fed. R. Civ. P. 8........................................2

  Fed. R. Civ. P. 8(a)(2)........................................4

## I.      INTRODUCTION

Plaintiff Entrata, Inc.[1] ("Entrata") brought this case in February 2015 to challenge the

ongoing abusive and anticompetitive conduct of defendant Yardi Systems, Inc. ("Yardi" or

"Defendant").   Unfortunately, Yardi has continued its anticompetitive ways, and Entrata now

seeks, through its "Motion for Leave to File First Amended Complaint" (Doc. No. 36; the

"Motion"]), to amend its initial complaint (the "Complaint") by adding one cause of action for

breach of contract and incorporating additional allegations reflecting recent market developments

and further factual investigation.[2]

Entrata's Motion is, frankly, routine.   Leave to amend is to be freely granted, and justice

requires that Entrata be afforded the opportunity to assert all of its claims with full inclusion of

newly discovered facts reflecting Yardi's ongoing anticompetitive conduct.   The Motion also is

timely:  Entrata sought to amend its Complaint promptly upon learning these new facts; and the

Amended Complaint could not possibly prejudice Yardi because Entrata filed the Motion at an

early stage of the case, prior even to initial disclosures or any fact discovery.   Nonetheless,

Yardi's verbose opposition (Doc. No. 47; the "Opposition" or "Opp.") ignores the liberal

standard for amending pleadings, fails to demonstrate any prejudice, and instead attempts to

masquerade as the equivalent of a motion to dismiss.

Yardi's only real basis for opposing Entrata's Amended Complaint is purported futility.

(Opp., p. 1.)  But Entrata's claims are well pled, and Yardi's argument ignores detailed and

specific factual allegations in the Amended Complaint regarding:  Yardi's strength in the

---

[1] During the pendency of this action, Property Solutions International, Inc. changed its corporate name to Entrata, Inc.  This brief, like the caption, refers to plaintiff by its current name, Entrata.

[2] Entrata notes that this Court previously granted it leave to file an over-length reply memorandum of up to 20 pages.  (Doc. No. 43.)

Accounting Product Market ("APM") (*see* Amended Complaint, ¶¶ 18, 24, 98, 135-36); the critical link between Yardi's dominance in the APM and the Integration Product Market ("IPM") (*see id.* ¶¶ 73, 89, 105-06, 145-47, 153-54); and the harm to the market inherent in Yardi's willful and deliberate attempts to destroy Entrata as its most viable competitor (*see id.* ¶¶ 11-12, 43, 99, 137, 140).  Yardi's futility argument is merely an attempt to distract from the routine nature of this Motion by pre-litigating arguments that more properly should be raised in a motion to dismiss.  For these reasons, and as set forth in Entrata's Motion, the Court should grant Entrata leave to file its Amended Complaint.

## II.     ARGUMENT

Yardi's Opposition is premised on a misapplication of both the liberal pleading standards of Federal Rule of Civil Procedure 8 and the liberal standard applied to motions to amend under Rule 15.  As Yardi concedes (Opp., p. 1), leave to file an amended complaint "should [be] freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a)(2); s*ee also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("leave [to amend] should, as the rules require, be 'freely given'"); *Atiya v. Salt Lake County*, 988 F.2d 1013, 1018 (10th Cir. 1993) ("in the words of the rule, a request to amend should be 'freely given'").  The purpose of this liberal rule is to ensure that "litigants [have] 'the maximum opportunity for each claim to be decided *on its merits* rather than on procedural niceties.'"  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (D. Utah 2006) (emphasis added); *see also Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009).  The early stage of this litigation, the Amended Complaint's detailed factual allegations, and the lack of prejudice to Yardi all weigh in favor of granting the Motion.

### A.        Principles of Justice Require Granting Entrata Leave to Amend.

Principles of justice and the permissive standard of Rule 15 support granting Entrata's Motion, especially absent prejudice to Yardi, because prejudice is the "prime concern in evaluating whether or not to allow amendment." *Wade v. Gaither*, 623 F. Supp. 2d 1277, 1285 (D. Utah 2009).  Yardi cannot reasonably assert that it would be prejudiced by the Amended Complaint, because the Motion:  (a) was filed exceptionally early in these proceedings before initial disclosures or any discovery had taken place; (b) is based on the same operative facts initially alleged; and (c) does not preclude Yardi from arguing substantive defenses in responsive pleadings.  *See Minter*, 451 F.3d at 1207-08.

Rather than attempting to show prejudice, Yardi opposes the Motion by arguing that amendment would be futile.  Yardi's overblown futility argument improperly attempts to turn its Opposition into a full motion to dismiss, "[b]ut the doctrine [of futility] is meant to apply in cases where a party *clearly* cannot state a claim."  *ClearOne Commc'ns, Inc. v. Chiang*, No. 2:07cv00037TC, 2007 WL 2572380, at *1 (D. Utah Sept. 5, 2007) (emphasis added) (unpublished).  Here, "the motion[] before the court pertain[s] to amendment—not dismissal— and *Twombly* did not abrogate the liberal rules of pleading."  *Hear-Wear Techs., LLC v. Oticon, Inc.*, No. 07-CV-0212-CVE-SAJ, 2007 WL 4379714, at *5 (N.D. Okla. Dec. 12, 2007) (unpublished).  Yardi allots at least 17 pages of its Opposition to various (incorrect) arguments that the Amended Complaint "fail[s] to state a claim" (*see, e.g.*, Opp., n 2), but neglects the liberal standard applied to both motions to amend *and* pleadings themselves.  Yardi's efforts run directly counter to the guidance of courts in this Circuit that "[a] motion to amend . . . should not be transformed by [defendant] into a mini-trial . . . [and defendants] may raise any arguments regarding the substance of [the] claims in responsive pleadings."  *Hear-Wear*, 2007 WL 4379714,

at *5.  As this Court has noted, Yardi's objections to the Amended Complaint are "more properly raised in a motion to dismiss where full briefing is allowed rather than in the motion to amend." *ClearOne*, 2007 WL 2572380, at *1.

### B.  Upon Filing, the Amended Complaint Will Replace the Original Complaint.

Yardi asserts that "[Entrata] may not disavow facts previously pled in an attempt to avoid judgment on the pleadings."  (Opp., p. 12; *see also id.*, p. 16.)  Aside from the fact that this is a motion to amend and not a motion for judgment on the pleadings, that assertion is simply an incorrect statement of law.  "[A]n amended complaint supercedes an original complaint and renders the original complaint without legal effect."  *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007) (internal quotation omitted); *see also Fullerton v. Maynard*, 943 F.2d 57 (Table), 1991 WL 166400, at *2 (10th Cir. 1991) ("It is a well-established general rule that an amended complaint . . . supersedes the complaint it modifies and renders the prior complaint of no legal effect.") (unpublished).  Allegations from the Complaint simply become *functus officio*, and "cannot be considered by the court on a motion to dismiss the amended complaint . . . [; the] court cannot resuscitate these facts when assessing whether the amended complaint states a viable claim."  *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998).

### C.  The Amended Complaint Asserts Proper Claims Supported by Detailed Allegations of Fact.

Entrata's Amended Complaint contains detailed factual allegations supporting its claims, including newly discovered facts and information developed after Entrata filed its Complaint. These well-pled allegations support each element of the asserted claims for relief, and therefore are neither futile nor susceptible to dismissal for failure to state a claim.

4

Yardi nonetheless asserts that the Amended Complaint would be futile due to a lack of "specific factual allegations" that would render it subject to dismissal, but Yardi overstates the applicable pleading standard.  (Opp., p. 5; *see also id.*, pp. 7, 15, 18.)  Rule 8(a)(2) merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and a complaint need not contain "detailed factual allegations."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("[s]pecific facts are not necessary").  This is particularly true in the context of antitrust claims, where it is clear that there is no "heightened pleading standard."  *Flying J, Inc. v. TA Operating Corp.*, No. 1:06-CV-30-TC, 2007 WL 4165749, at *2 (D. Utah, Nov. 20, 2007) (*citing Twombly*) (unpublished).  On the contrary, "the standard [for dismissal] is even more rigorous in antitrust cases 'where the proof is largely in the hands of the [defendants].'"  *Bell v. Fur Breeders Agric. Coop.*, 3 F. Supp. 2d 1241, 1242 (D. Utah 1998) (*quoting Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746 (1976)).  Here, Entrata's Amended Complaint *does* allege a plethora of specific facts sufficient to support its claims, but further key information regarding Yardi's anticompetitive conduct is likely to be in Yardi's own possession—for example, Yardi's focus on Entrata and attempts to force purchasers of Yardi APM products (such as Voyager) to also purchase Yardi IPM products (such as Rent *Café*).[3]  "In such cases, 'dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.'"  *Id.*

Moreover, the cases in Yardi's Opposition discussing the "sufficiency" of factual allegations are plainly distinguishable.  As noted in Entrata's Motion (*see* p. 10), those cases concern pleadings that offered little to nothing in the way of factual allegations.  *See Philips*

---

[3] Additional examples of Entrata's and Yardi's APM and IPM products are included in ¶ 23 of the Amended Complaint.

*Elecs. N. Am. Corp. v. BC Tech., Inc.*, No. 2:08-cv-639, 2009 WL 2381333 (D. Utah, Aug. 3, 2009) (rejecting proposed amended counterclaims that did not allege sufficient facts)[4] (unpublished); *see also Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (finding that "bald allegations of 'conspiracy' and 'bid-rigging' are insufficient to support an antitrust claim"); *Mountain View Pharm. v. Abbott Labs.*, 630 F.2d 1383, 1388 (10th Cir. 1980) (dismissing and denying leave to amend where the plaintiff "did little more than recite the relevant anti-trust laws").  The decisions in those cases discuss complaints essentially "us[ing] statutory language to describe the alleged antitrust violations without including any factual allegations whatsoever." *See In re Urethane Antitrust Litig.*, 409 F. Supp. 2d 1275, 1281 (D. Kan. 2006) (*quoting Mountain View Pharm.*, 630 F.2d at 1385).  In contrast, Entrata's Amended Complaint offers substantial, detailed allegations to support its claims.  "The allegations in this case are far afield from merely parroting the statutory language."  *Id.*

Yardi does not assert that the Amended Complaint fails to plead every element of the various causes of action.  Accordingly, Entrata addresses only those elements that Yardi alleges are insufficient.

1.    **The Amended Complaint Properly Alleges Monopolization and Attempted Monopolization of the Accounting Product Market.**

The Amended Complaint alleges that Yardi engaged in a pattern of conduct intentionally designed and implemented to eliminate viable competition in the APM, with a specific focus on Entrata as the leading competitor, and perhaps one of the only viable competitors, in that market.

---

[4] A copy of the proposed amended counterclaims may be found as Document No. 27-2 in Case No. 2:08-cv-00639-CW.

(Amended Complaint, ¶¶ 7, 58, 64, 106, 139, 147.[5]) Yardi ignores those specific allegations and nonetheless argues (wrongly) that the Amended Complaint fails to allege "anticompetitive conduct or effect," "antitrust injury," or "specific intent" in the APM.  (Opp., pp. 6-7.)

Yardi's specific intent to maintain or create a monopoly can be inferred from its anticompetitive conduct.  *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1130 (10th Cir. 2014) ("[Because] the fact-finder could reasonably infer monopoly power and exclusionary conduct . . . the jury could also find an intent to monopolize.").  That anticompetitive conduct by Yardi, designed to perpetuate or create a monopoly in the APM, includes:

- Making knowingly false and misleading statements designed to damage Yardi's competitors, including statements regarding SQL injection and other security concerns.  (*See* Amended Complaint, ¶¶ 43, 46, 56, 63-64, 80.)  Such false and deceptive conduct, when aimed at a competitor, is plainly anticompetitive.  *See Caldera, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 1244, 1248-49 (D. Utah 1999) (alleged anticompetitive conduct included "false statements" and "product disparagement" regarding software interoperability).

- Decompiling and exploiting Entrata's proprietary software for anticompetitive effect.  (*See* Amended Complaint, ¶¶ 39, 57-58, 60.)  Yardi's decompiling and disabling of Entrata's software, in clear breach of a non-disclosure agreement (NDA) between the parties, as well as other illegal acts, are additional examples of conduct that is "reasonably capable of contributing significantly to creating or maintaining monopoly

---

[5] As noted in the Amended Complaint (¶ 95), there are very few U.S.-based companies that offer Accounting Products and Integration Products internationally.

power." *Instructional Sys. Dev. Corp. v. Aetna Cas. & Sur. Co.*, 817 F.2d 639, 649 (10th Cir. 1987).

- Engaging in a range of other anticompetitive acts designed to stifle competition (*see* Amended Complaint, Claims for Relief Nos. 1-4, 8-9), including the tying of IPM products to a dominant APM product. (*See id.*, ¶ 153.) Yardi's tying of its IPM products serves as an independent example of anticompetitive conduct. *See Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 63 F.3d 1540, 1550 (10th Cir. 1995) ("Illegal tie-ins . . . under section 1 may also qualify as anticompetitive conduct for section 2 purposes.").

- In addition, Yardi's intentional exclusion of Entrata, and other conduct directed specifically at Entrata, is a textbook example of an anticompetitive refusal to deal. (*See* Amended Complaint, ¶¶ 20, 26-36, 37, 42, 50, 52-54, 57, 77-78, 85.) *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074-75 (10th Cir. 2013) (holding that refusal to deal is anticompetitive conduct where there is "a preexisting voluntary and presumably profitable course of dealing between the monopolist and rival," and the discontinuation of that dealing "suggest[s] a willingness to forsake short-term profits to achieve an anti-competitive end") (discussing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985)). Yardi openly invited and encouraged cooperation with Entrata on its custom interface before ending that cooperation and discontinuing its dealings with Entrata, a decision that the Amended Complaint alleges forgoes short-term profits and is economically irrational *absent* a long-term

anticompetitive goal.  (*See, e.g.*, Amended Complaint, ¶¶ 29-36, 48-49, 66, 77-78, 88, 146-47.)

Whether considered individually or in totality, "based on an examination of all the predatory conduct [defendant] engaged in," the Amended Complaint pleads facts sufficient to support Entrata's claims that Yardi either monopolized or attempted to monopolize the APM in violation of Section 2 of the Sherman Act.  *See Caldera*, 87 F. Supp. 2d at 1249.

Yardi incorrectly asserts that its anticompetitive conduct in other markets cannot show harm or antitrust injury in the APM.  (Opp., pp. 4-5.)  However, as specifically described in the Amended Complaint and below, the APM and IPM are adjacent markets.  (Amended Complaint, ¶ 100.)  Moreover, the threat posed by Entrata to Yardi's monopoly in the APM is unique, as Entrata is one of only a handful of companies that offer both APM and IPM products.  (*Id.*, ¶ 95.)  A feature of the APM and IPM is that there are significant complexities, costs, and related uncertainties involved in switching between competing products.  (*Id.*, ¶¶ 98, 103-06, 137.)  Accordingly, it is difficult for customers to do so.  As a result, Entrata's well-regarded and market-accepted IPM products—and Entrata's status as one of the few companies offering a full suite of APM and IPM products—present a unique opportunity for customers to transition away from Yardi's dominant APM product, Voyager.  (*See id.*, ¶¶ 15-17, 46-47, 87-88, 94, 106, 137.)  Yardi's anticompetitive disparagement of Entrata and its conduct in the IPM is designed to prevent Entrata from offering a competitive alternative, and to preserve or facilitate Yardi's APM dominance.  (*Id.*, ¶ 137.)

While Yardi's anticompetitive conduct was designed to, and did, affect the APM as a whole, including customers and competitors (*id.*, ¶¶ 7, 44, 47-48, 73, 138), Entrata's position as

the leading, or perhaps only, currently viable competitor to Yardi in the APM places it in a unique position to challenge Yardi's dominance (*id.,* ¶¶ 11-12, 43, 47-48, 99, 137, 140). Accordingly, Entrata was the target of Yardi's most vicious anticompetitive conduct.  That conduct is itself an anticompetitive act specifically intended to affect the APM as a whole by potentially eliminating Yardi's sole viable competitor.  *See Suture Express, Inc. v. Cardinal Health 200, LLC*, 963 F. Supp. 2d 1212, 1220 (D. Kan. 2013) (citing cases acknowledging that damage to a critical competitor may also damage competition in general); *see also Multistate Legal Studies*, 63 F.3d at 1555-56 (denying summary judgment where "if [plaintiff] is eliminated, new market entrants may not be able to establish a competitive [market]").

> ### 2.   The Amended Complaint Properly Alleges Attempted Monopolization of the Integration Product Market.

As discussed above, the Amended Complaint describes Yardi's pattern of anticompetitive conduct stretching across the APM and IPM, reflecting Yardi's intentional strategy to prevent competition in the APM at all costs and leverage its dominance in that market into the IPM.  But, again, Yardi ignores the Amended Complaint's specific allegations and opposes amendment of the IPM claims for reasons nearly identical to those of the APM claims, including that there is no allegation of anticompetitive conduct or a "dangerous probability" of monopolization.  (Opp., pp. 7, 11.)

The Amended Complaint is replete with detailed factual allegations describing Yardi's anticompetitive conduct with respect to the IPM.  For example, Entrata alleges that Yardi forced its APM customers to enter into anticompetitive agreements restricting their use of competitors' IPM products (*see, e.g.*, Amended Complaint, ¶¶ 74-76, 83-84, 164) and intentionally spread false information to stoke security concerns regarding those competing IPM products (*id.,* ¶¶ 43,

46, 56, 62-64, 80.) Yardi took these measures to force its APM customers to purchase its IPM products, and to force competitors to use its standard interface—an interface that Yardi alone ultimately controls and restricts or prohibits access to. (*Id.,* ¶¶ 30, 50-52, 86.) That standard interface offers only limited functionality compared to current custom interfaces and as a product overall. (*Id.,* ¶ 30.) Yardi's requirement that competitors use a standard interface is akin to forcing them to compete with one hand tied behind their backs. While Yardi asserts that the purported "availability" of a standard interface indicates a lack of anticompetitive conduct or harm, the fact remains that Yardi utilizes its control over the standard interface to deny access to competitors such as Entrata. (*Id.,* ¶¶ 50-52, 86.) In fact, Entrata in particular, as possibly the only viable competitive threat to Yardi's leveraging, has been a target of such anticompetitive conduct. In light of Yardi's past invitations to cooperate and its economically irrational short-term conduct, its refusal to deal is an additional independent anticompetitive act.

The Amended Complaint further alleges that Yardi's dominant position in the APM and the severity of its anticompetitive conduct create a dangerous propensity of success in monopolizing the IPM. Yardi's current IPM share does not make it a monopolist, but that is not the test. *See Shoppin' Bag of Pueblo, Inc. v. Dillon Cos., Inc.*, 783 F.2d 159, 162 (10th Cir. 1986) (relevant factors include, but are not limited to, a defendant's market share, whether the defendant is a multimarket firm, the number and strength of other competitors, market trends, and entry barriers). Yardi has a dominant position in an adjacent market and is able to, and indeed will, use that dominant position and its "monopoly in the [Accounting Product] market, to illegally maintain its monopoly in the [Integration Product] market." *Caldera, Inc. v. Microsoft Corp.*, 72 F. Supp. 2d 1295, 1304 (D. Utah 1999). Yardi's initial market share can rapidly

11

increase, and has been increasing since the initial Complaint was filed, especially because Yardi's most egregious anticompetitive conduct is fairly recent in effect. *See Multistate Legal*, 63 F.3d at 1554-55 (denying summary judgment where tied product market share increased from 2%–70% in one year and citing cases showing rises in tied market share from 5%–51% within four years and 15% over 18 months). Yardi has a dangerous probability of monopolizing the IPM.

Moreover, Entrata has a unique position as the most serious competitive threat to Yardi's dominance in the IPM. As alleged in the Amended Complaint, if not for Entrata, Yardi would be capable of rapidly leveraging its dominant position in the APM into a monopoly in the IPM (as demonstrated by its current ability to coerce customers into anticompetitive agreements restricting the use of competitors' IPM products). (*See, e.g.*, Amended Complaint, ¶¶ 73-75, 90, 93.) Competitors would be unable to arrest the growth of that IPM monopoly due to the advantages Yardi would have stemming from its illegal monopoly in the APM and the market's extreme barriers to entry. (*Id.*, ¶¶ 103-06.) In effect, absent competition from Entrata, Yardi's anticompetitive conduct would be creating a "turn-key" monopoly in the IPM.

### 3. The Amended Complaint Properly Alleges Unlawful Tying.

Yardi initially argues that the Amended Complaint does not establish a dangerous propensity to monopolize the IPM through anticompetitive conduct. That argument is already addressed above. The Amended Complaint pleads facts demonstrating that Yardi unlawfully ties its IPM products to its dominant APM software as a way to weaken competitors and extend its monopoly power into adjacent markets. Yardi's additional assertion that allegations regarding its coercive conduct are "conclusory" is incorrect as a matter of fact and law.

Alleging a tie requires that "the sale or agreement to sell one product or service is *coerced or conditioned* upon the purchase of another." *In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*, No. 09-ML-2048-C, 2011 WL 6826813, at *5, 7-8 (W.D. Okla. Dec. 28, 2011) (*citing Multistate Legal*, 63 F.3d at 1546 (emphasis added)) (unpublished).  The Amended Complaint alleges in detail the coercion that Yardi imposes on its customers to restrict the use of competitors' IPM products.  (*See, e.g.*, Amended Complaint, ¶¶ 75, 79-80, 84-85, 87, 90, 93, 106, 153.)  That coercion includes, among other things, requiring customers to enter into agreements restricting their ability to use IPM products as a condition of using Yardi's APM product, and refusing to certify—and thereby preventing customers from using—Entrata's or others' IPM products.  Yardi also offers its IPM products for free when engaging in head-to-head competition with Entrata.  (*Id.*, ¶ 155.)  Yardi's assertion that offering a product for free does not indicate a tie is inapposite here; the allegation is not that Yardi offers its IPM products for free in all instances, but that it does so when competing directly against Entrata.  (*Id.*)  Such conduct typifies Yardi's anticompetitive approach to Entrata.

The ultimate goal of Yardi's conduct, to the detriment of consumers, is to alter a customer's purchasing decision away from competitors' products and toward its own products. As also alleged in the Amended Complaint, due to the nature and structure of the IPM and APM, Yardi's coercion necessarily forces consumers to switch to Yardi's products (*see, e.g., id.*, ¶¶ 104-06, 153-54), which is the very reason "[t]ying arrangements are unlawful '[b]ecause they deny competitive access to the tied product market on the basis of the seller's leverage in the tying product market, and force buyers to forego free choice between sellers.'" *Abraham v. Intermountain Health Care, Inc.*, 461 F.3d 1249, 1264 (10th Cir. 2006) (*quoting Ohio-Sealy*

*Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 834 (7th Cir. 1978)).  Yardi's anticompetitive conduct goes far beyond a mere "business dispute," as Yardi describes it, and is a deliberately calculated action to maintain and expand its dominance in the APM, and leverage that dominance into the IPM—at the expense of competitors and consumers.

### 4.     The Amended Complaint Properly Alleges Monopoly Leveraging.

Yardi argues that Entrata's monopoly leveraging claim is futile for the "same reasons" as its attempted monopolization claims:  a lack of alleged anticompetitive conduct, harm to the market, or dangerous probability of monopolizing the IPM.  (Opp., p. 14.)  Those arguments are already addressed above.  In any event, and even if the Court were to find a standalone claim for monopoly leveraging unviable, Yardi's monopolistic leveraging still serves as an independent example of anticompetitive conduct in violation of Section 2 of the Sherman Act.  *See Christou v. Beatport LLC*, 849 F. Supp. 2d 1055, 1071 (D. Colo. 2012) (finding allegations of monopoly leveraging sufficient to allege anticompetitive conduct and specific intent to monopolize).

### D.     Entrata's Claim for Breach of Contract Is Timely and Not Prejudicial.

Yardi asserts that Entrata's proposed breach of contract claim should be denied for two reasons:  (1) it does not allege injury and (2) it is based on facts that were previously known to Entrata.  As to Yardi's first point, the Amended Complaint does allege that Yardi caused injury to Entrata by decompiling Entrata software code in breach of a binding agreement between the parties.  "[Yardi] has used the [Entrata] Confidential Information it was afforded access to under the terms of the 2006 NDA to the detriment of or in competition with [Entrata]," and "[Entrata] has suffered damages as a result of Yardi's breach."  (*See* Amended Complaint, ¶¶ 173, 176; *see also id.,* ¶¶ 39, 40, 57, 58.)  In addition, the knowledge Yardi gained as a result of its breach

14

enabled it to disable the diagnostics.asmx file in Entrata's IPM products, on multiple occasions, preventing that software from transferring information between databases and rendering it useless. (*Id.,* ¶ 58.) That conduct directly caused competitive damage to Entrata (*id.,* ¶ 65), and has caused "a number of [Entrata's] existing customers [to] terminate or threaten[] to terminate certain services and move to Yardi products . . . ." (*Id.,* ¶¶ 73, 87.) Entrata's allegations are more than sufficient to plead injury from Yardi's conduct and satisfy the Federal Rules' liberal pleading and amendment standards (as described above).

Yardi's second argument is not serious. Entrata seeks to amend its Complaint, before this case has even begun in earnest and based on information that was previously unavailable. Yardi merely alleges that because a diagnostics.asmx file was mentioned in the Complaint, the Amended Complaint cannot now allege a breach related to that file. (*See* Opp., p. 18.) As explained in Entrata's Motion, Entrata only received information after the filing of the Complaint, due to confidentiality restrictions, showing that Yardi decompiled its software. (*See* California action, Document No. 106 therein and supporting documents, including the joint brief [Doc. No. 106-1] at 8-10, Exhibit 17 [Yardi email], Exhibit 18 [Yardi email], Exhibit 52 [NDA], and Exhibit 72 [transcript of Anant Yardi deposition].)[6] Doing so enabled Yardi to use what it learned to disable, modify, or remove Entrata's software, including the diagnostics.asmx file, in violation of the 2006 NDA. (*See* Amended Complaint, ¶¶ 39, 57-58, 60, 175.) Entrata's claim could not have previously been alleged without that new information showing the relevant conduct of how Yardi was able to modify the file in breach of the 2006 NDA. Yardi does not dispute that Entrata moved diligently to assert its claim once this information finally became

---

[6] These documents may be found on Pacer in Case No. 2:13-cv-07764-FMO-CW in the U.S. District Court for the Central District of California.

available, and Yardi does not assert any manner in which it may be prejudiced by the assertion of this claim.  There can be no prejudice therefrom.

## III.    CONCLUSION

For the foregoing reasons and those stated in Entrata's Motion, Entrata respectfully requests that it be granted leave to file the Amended Complaint.

Dated: November 24, 2015                    Respectfully submitted,

                                            Sterling A. Brennan
                                            R. Parrish Freeman
                                            MASCHOFF BRENNAN LAYCOCK GILMORE
                                            ISRAELSEN & WRIGHT PLLC

                                            Michael A. Jacobs
                                            Eric M. Acker
                                            Jeffrey A. Jaeckel
                                            Andrew L. Meyer
                                            MORRISON & FOERSTER LLP

                                            By:  /s/ Sterling A. Brennan
                                                      Sterling A. Brennan
                                            Attorneys for Plaintiff ENTRATA, INC., f/k/a
                                            PROPERTY SOLUTIONS INTERNATIONAL, INC.