# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ENTRATA, INC., a Delaware corporation,<br><br>Plaintiff,<br>v.<br><br>YARDI SYSTEMS, INC., a California corporation<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S RULE 72(a) OBJECTION TO MAGISTRATE JUDGE'S ORDER<br><br>Case No. 2:15-cv-00102<br><br>Judge Clark Waddoups |

Before the court is Defendant Yardi Systems, Inc.'s (Yardi) Rule 72(a) Objection, (ECF No. 302) to Chief Magistrate Judge Paul M. Warner's June 20, 2018 Memorandum Decision and Order. (ECF No. 287.) On May 21, 2018, Yardi filed a short form Motion to Claw Back Exhibit 473 and Strike Portions of Anant Yardi's Deposition Transcript. (ECF No. 237.) On June 20, 2018, Chief Magistrate Judge Warner entered an order denying Yardi's Motion. (ECF No. 287 at 6.) Yardi moves the court for review of Chief Magistrate Judge Warner's ruling, arguing that it was both clearly erroneous and contrary to law. (ECF No. 302 at 5.) As explained below, the court DENIES Yardi's Objection.

I.  **Background**

Arnold Brier is Yardi's "Vice President and General Counsel." (Brier Aff. ¶ 1, ECF No. 244 at 2.) Brady Bustany is "Yardi's Senior Counsel." (Brier Aff. ¶ 2, ECF No. 244 at 2.) Anant Yardi is Yardi's President. (Brier Aff. ¶ 4, ECF No. 244 at 3.) Gordon Morrell is Yardi's Executive Vice President. (Brier Aff. ¶ 4, ECF No. 244 at 3.)

According to Mr. Brier, "[b]eginning in late October 2014," he and Mr. Bustany "created and edited a draft letter to Yardi's customers about Yardi's ongoing [California] lawsuit with [Entrata] for Anant Yardi's signature." (*See* Brier Aff. ¶ 2, ECF No. 244 at 2.) "An iteration of

1

this draft letter," "marked Exhibit 473 at the deposition of Anant Yardi," "includes Mr. Bustany's" and Mr. Brier's "tracked edits." (Brier Aff. ¶ 2, ECF No. 244 at 2.) At least three other iterations of the draft letter exist, each of which contains similar language to Exhibit 473. (*See* ECF Nos. 262-1, 262-2, and 262-3.) None of the iterations of the letter were ever sent to Yardi's customers. (*See* Brier Aff. ¶ 2, ECF No. 244 at 2.) Mr. Brier only shared "the draft letter" with Anant Yardi, Godron Morrell, and Mr. Bustany. (Brier Aff. ¶ 4, ECF No. 244 at 2.)

On April 30, 2015, the Magistrate Court entered a Stipulated Protective Order. (ECF No. 32.) The Stipulated Protected Order contained a provision titled "Inadvertent Production of Privileged or Otherwise Protected Material." (ECF No. 32 at 24.) That provision states, in part, that "[i]nadvertent or unintentional production of any document . . . subject to . . . work-product immunity shall not constitute a waiver of the . . . work-product immunity, if any, as they apply to those documents specifically or to the subject matter of those documents generally . . . ." (ECF No. 32 at 24.) The Stipulated Protective Order also required the Producing Party to "provide a written request [to the Receiving Party] for the return of those documents . . . within a reasonable time after determining the documents should not have been produced." (ECF No. 32 at 24.) The Stipulated Protective Order also provided that "[i]f the Producing Party discovers that privileged, work-product, or otherwise protected documents and things have been inadvertently produced based upon the Receiving Party's use of such information during a deposition . . . the Producing Party may orally request the return of the information and the Receiving Party must immediately cease examination or argument regarding the specific substantive content of the document." (ECF No. 32 at 24-25.) The Stipulated Protective Order also provided that "[t]his provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review." (ECF No. 32 at 25.)

On September 20, 2017, the Magistrate Court entered an Order Governing Discovery of Electronically Stored Information. (ECF No. 124.) That Order contained a provision titled "Privileged Material." (ECF No. 124 at 11.) That provision provided, in part, that "[t]he designation and treatment of . . . work-product, and any other protected material will be governed by the terms of the Stipulated Protective Order entered in this case on April 30, 2015 (Dkt. No. 32)." (ECF No. 124 at 11.) That provision also provided that "[t]he mere production of ESI as part of a mass production will not itself constitute a waiver under Federal Rule of Evidence 502, or for any other purpose." (ECF No. 124 at 11.) The Order Governing Discovery of Electronically Stored Information also contained a provision titled "Materials Produced in California Litigation," which the Magistrate Court referred to as the "California Action," and which contained the case number and name of that lawsuit. (*See* ECF No. 124 at 5 ("The parties may, but need not, produce in this Action any ESI previously produced in *Yardi, Inc. v. Property Solutions*, No. 2:13-cv-07764 in the United States District Court for the Central District of California . . . .").)

On September 30, 2017, Yardi produced Exhibit 473 for the first time. (*See* Cross Decl. ¶ 4, ECF No. 260 at 3.) Yardi again produced Exhibit 473 "as part of the reproduction of Yardi's documents on December 5, 2017 . . . ." (Cross Decl. ¶ 4, ECF No. 260 at 3.) Yardi also produced three other iterations of Exhibit 473 on four occasions. (*See* Cross Decl. ¶ 2, ECF No. 260 at 2-3.) For example, Yardi produced one iteration of Exhibit 473 on September 30, 2017 and on December 5, 2017. (*See* Cross Decl. ¶ 2, ECF No. 260 at 2-3.) Yardi also produced a second iteration of Exhibit 473 on May 1, 2018. (*See* Cross Decl. ¶ 2, ECF No. 260 at 2.) And Yardi produced a third iteration of Exhibit 473 on that same day. (*See* Cross Decl. ¶ 2, ECF No. 260 at

2-3.) In total, Yardi produced Exhibit 473 or an iteration of Exhibit 473 a total of six times. (*See* ECF No. 332 at 10.[1])

On May 15, 2018, a videotaped deposition of Anant Yardi was held in Los Angeles, California. (ECF No. 262-10.) At this deposition, Entrata's counsel asked Mr. Yardi questions about Exhibit 473. (*See* ECF No. 262-10 at 71–74.) For example, Entrata's counsel asked Mr. Yardi, "in this letter signed by you dated January 1 of 2015, it reads, '[e]ffective December 31, 2015, we will no longer permit Property Solutions to interface with Yardi cloud using their custom interface with the Yardi standard interface,' correct?" (ECF No. 262-10 at 5.) Mr. Yardi responded "I see that." (ECF No. 262-10 at 5.) Entrata's counsel then asked: "as indicated in Exhibit 473," "you had already decided that you were going to no longer allow Entrata to interface with Yardi cloud using its custom interface or the Yardi standard interface," "correct, sir?" (ECF No. 262-10 at 5.) Yardi's counsel objected to the question, arguing that it "misstate[d] facts, misstate[d] the document, lacks foundation, [and] calls for speculation," but Mr. Yardi then answered "I have no recollection of this letter." (ECF No. 262-10.) Entrata's counsel later asked "there is a draft letter dated only two weeks before Yardi took certain steps affecting the Entrata custom interface that has your signature where you were announcing termination of that partnership, as you sit here today, you have no recollection of it; is that right, sir?" (ECF No. 262-10 at 6.) Yardi's counsel again objected, but Mr. Yardi answered "I have no recollection." (ECF No. 262-10 at 6.) Entrata's counsel later asked "this letter was never finalized and never went out, did it, sir?" (ECF No. 262-10 at 6.) Yardi's counsel again objected, but Mr. Yardi

---

[1] "Yardi has confirmed" that there are "six instances" in which "iterations of the document that is Exhibit 473 were inadvertently produced." (*See* ECF No. 332 at 10 n. 2.)

answered "I don't have any recollection of this letter and I can see my signature." (ECF No. 262-10 at 6.)

On May 21, 2018, Yardi filed its Motion to Claw Back Exhibit 473 and Strike Portions of Anant Yardi's Deposition Transcript. (ECF No. 237.) Yardi argued that Exhibit 473 was "inadvertently produced" and argued that "Yardi is entitled to claw it back." (*See* ECF No. 237 at 2–3.) Yardi "respectfully request[ed] that the Court order [Entrata] . . . to destroy or return all copies of Exhibit 473 . . . and strike all references to, and questions and answers regarding, Exhibit 473 to the deposition of Anant Yardi." (ECF No. 237 at 2.) Yardi argued that Exhibit 473 was a privileged attorney-client communication. (*See* ECF No. 237 at 2-3.) In support of this argument, Yardi stated that "all other instances of Exhibit 473 were withheld as privileged." (ECF No. 237 at 2 (citing Walker Decl., ¶¶ 4–6, ECF No. 238-1).) Yardi further argued that "[t]he work product doctrine also protects Exhibit 473." (ECF No. 237 at 3.) In support of its argument that "Yardi is entitled to claw [Exhibit 473] back," Yardi cited Federal Rule of Civil Procedure 26(b)(5)(B); Federal Rule of Evidence 502(d); and the court's Stipulated Protective Order. (ECF No. 237 at 3.) But nowhere in the Motion did Yardi argue that it had complied with the Stipulated Protective Order's (ECF No. 32 at 25) requirement that Yardi "provide a written request" to Entrata "for the return of those documents . . . within a reasonable time after determining the documents should not have been produced." (ECF No. 32 at 24.)

On June 1, 2018, Entrata filed its Opposition to Yardi's Motion. (ECF No. 259.) Entrata argued that "Yardi . . . failed to meet its burden." (ECF No. 259 at 2 (citing *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984).) Entrata also argued that "Exhibit 473 is not an attorney-client communication," and argued that "[w]ork product protection is inapplicable." (ECF No. 259 at 2.) Entrata also demonstrated, contrary to what Yardi had argued in its Motion,

5

that Yardi had previously produced Exhibit 473. (ECF No. 259 at 2 ("Yardi produced *three* instances of Exhibit 473—and produced Exhibit 473 itself *twice*—refuting Yardi's claim of inadvertence.").)

On June 20, 2018, the Magistrate Court entered an order denying Yardi's Motion. (ECF No. 287 at 5.) The Magistrate Court "conclude[d] that" "Exhibit 473" "does not constitute an attorney-client privileged communication." (ECF No. 287 at 5.) The Magistrate Court stated:

> As Yardi has indicated, Exhibit 473 is a draft letter showing edits made by Arnold Brier ("Mr. Brier"), Yardi's Vice President and General Counsel. The mere fact that Mr. Brier was involved with Exhibit 473 does not automatically render it subject to attorney-client privilege protection. *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010). Furthermore, documents prepared to be sent to third parties, like Exhibit 473, even when prepared by counsel, are generally not attorney-client privileged. *See In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 1106257, at *7 (D. Kan. Mar. 24, 2017). Finally, the court concludes that the types of edits made by Mr. Brier constitute nothing more than simple editorial changes, which do not qualify for attorney-client privilege protection. *See id.* ("[T]he attorney-client privilege does not attach to simple editing or 'word-smithing' by counsel.").

(ECF No. 287 at 6.) Because "Yardi . . . failed to persuade the [Magistrate Court] that Exhibit 473 was prepared 'in anticipation of litigation,'" the Magistrate Court also "conclude[d] that Exhibit 473 does not qualify as attorney work product." (ECF No. 287 at 6.)

**II. Analysis**

Under Federal Rule of Civil Procedure 72(a), a district court is required to "consider timely objections [to a nondispositive order from a magistrate judge] and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). "Under Rule 72, a district court is 'required to 'defer to the magistrate

6

judge's ruling unless it is clearly erroneous or contrary to law.'" *Raytheon Co. v. Cray, Inc.*, No. 2:16-MC-898-DAK, 2017 WL 823558, at *2 (D. Utah Mar. 2, 2017) (quoting *Allen v. Sybase, Inc.*, 468 F.3d 642, 658–59 (10th Cir. 2006)). "The 'clearly erroneous' standard under Rule 72(a) applies to factual findings." *Id*. (citation omitted). "In order for a district court to overturn a magistrate judge's decision as clearly erroneous, the court must be left with a 'definite and firm conviction that a mistake has been committed.'" *Id*. (citation omitted). "Under the 'contrary to law' standard, the district court conducts a plenary review of the magistrate judge's purely legal determinations, setting aside the magistrate judge's order only if it applied an incorrect legal standard." *Id*. (citation omitted).

Yardi makes two arguments. First, Yardi argues that the Magistrate Court made a factual finding that was clearly erroneous. (*See* ECF No. 302 at 7.) Second, Yardi argues that the Magistrate Court's order was "contrary to law because Exhibit 473 is a Privileged Attorney-Client Communication, the Privilege has not been waived, and Exhibit 473 constitutes attorney work product." (ECF No. 302 at 8.)

<u>Magistrate Court's Factual Findings</u>

Yardi argues that the Magistrate Court had an "apparent misapprehension as to the salient facts." (ECF No. 302 at 7.) More specifically, Yardi argues that the Magistrate Court "clearly misunderstood Mr. Brier's role" in drafting Exhibit 473. (*See* ECF No. 332 at 6.) Yardi argues that the Magistrate Court mistakenly believed that Mr. Brier only edited Exhibit 473—not that he himself drafted it. (*See* ECF No. 332 at 6.) Entrata, on the other hand, argues that the Magistrate Court "did ***not*** find that Mr. Brier was involved in a 'purely editorial capacity' or that he did not draft the document." (ECF No. 331 at 8.) Yardi describes Entrata's argument as a "bold claim"

7

that is "patently false." (ECF No. 332 at 5.) In support of its position that Entrata's arguments are false, Yardi argues:

> The Chief Magistrate's Order specifically stated "the court concludes that *the types of edits made by Mr. Brier* constitute nothing more than simple editorial changes, which do not qualify for attorney-client privilege protection." Dkt. No. 287 at 6. The Chief Magistrate went on to state that "[T]he attorney-client privilege does not attach to simple editing or 'word-smithing' by counsel." *Id.* (quoting In re Syngentia AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 1106257, at *7 (D. Kan. Mar. 24, 2017).

(ECF No. 332 at 6 (emphasis in original).) Yardi further argues that "in this case, the Chief Magistrate clearly misunderstood Mr. Brier's role, which is why the order focused on the type of edits made by Mr. Brier as opposed to the underlying purpose for which Exhibit 473 was drafted." (ECF No. 332 at 6.) But in support of its argument that the Magistrate Court made a factual finding that was clearly erroneous, Yardi largely ignores the Magistrate Court's statement that "documents prepared to be sent to third parties, like Exhibit 473, *even when prepared by counsel*, are generally not attorney-client privileged." (ECF No. 287 at 6 (emphasis added).) This is significant.

The court agrees with Yardi that the Magistrate Court's order largely "focused on the type of edits made by Mr. Brier . . . ." (ECF No. 332 at 6.) But Yardi has alleged that Exhibit 473 was **both** "created and edited" by Mr. Brier. (Brier Aff. ¶ 2, ECF No. 244 at 2.) The Magistrate Court's reference to "documents . . . prepared by counsel" (ECF No. 287 at 6) is evidence that the Magistrate Court understood that Mr. Brier prepared Exhibit 473. In other words, the Magistrate Court's reference to "documents . . . prepared by counsel" (ECF No. 287 at 6) undercuts Yardi's argument that the Magistrate Court "clearly misunderstood Mr. Brier's role." (ECF No. 332 at 6.) The court is therefore not left with the "definite and firm conviction" that the

8

Magistrate Court made a mistake. The Magistrate Court's order was therefore not clearly erroneous.

Yardi also argues that the Magistrate Court's conclusion that Exhibit 473 "does not qualify as attorney work product" because "Yardi has failed to persuade the [Magistrate Court] that Exhibit 473 was prepared 'in anticipation of litigation'" (ECF No. 287 at 6 (citation omitted)) is clearly erroneous. (*See* ECF No. 302 at 11.) Yardi argues that the Magistrate Court's holding was clearly erroneous because it relied on Entrata's "factually misleading argument." (ECF No. 302 at 11.) But, regarding work product, nothing in the text of the Magistrate Court's Order indicates that it relied on any statement by Entrata. Again, the court is not left with the "definite and firm conviction" that the Magistrate Court made a mistake. The Magistrate Court's Order regarding work product was not clearly erroneous.

Magistrate Court's Legal Determinations

As noted above, Yardi argues that the Magistrate Court's order was "contrary to law because" [1] "Exhibit 473 is a Privileged Attorney-Client Communication," [2] "Exhibit 473 constitutes attorney work product" and [3] the Privilege has not been waived. (ECF No. 302 at 8.)

1. Attorney-Client Privilege

Yardi argues that Exhibit 473 "constitutes a privileged attorney-client communication" because it "was drafted by Arnold Brier" and because it "contains legal advice regarding which details to potentially disclose to customers about ongoing litigation between Yardi and Entrata." (ECF No. 332 at 8.) "The attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (citations

9

omitted) (internal quotation marks omitted). "[T]he privilege will [also] protect at least those attorney to client communications which would have a tendency to reveal the confidences of the client." *Id*; *see also* 1 Paul R. Rice, Attorney-Client Privilege in the U.S. § 5:2 (2017) ("The privilege . . . provides . . . only a derivative protection for communications *from* the *attorney* to the client, and only then to the extent that the responsive attorney communications reveal the substance of protected communications from the client.").

Yardi argues that the letter itself "was a privileged communication" (ECF No. 332 at 9) because "the draft letter contained a timeline of the litigation, admissions that had been made by the parties, and the allegations that were in the process of being litigated." (ECF No. 302 at 10.) But none of these things revealed the substance of protected communications from Anant Yardi. In fact, Anant Yardi repeatedly stated that he "had no recollection" of Exhibit 473. Exhibit 473 is not a privileged attorney-client communication. The Magistrate Court's conclusion that Exhibit 473 "does not constitute an attorney-client privileged communication" was not contrary to law.

Exhibit 473 is not a privileged attorney-client communication because it does not reveal the substance of Anant Yardi's communications to Mr. Brier. The court nevertheless considers, under the assumption that Exhibit 473 does reveal the substance of Anant Yardi's communications to Mr. Brier, whether the Magistrate's Order was contrary to law.

Yardi argues that the Magistrate Court "failed to apply the correct legal principal in analyzing whether Exhibit 473 is privileged." (ECF No. 332 at 8.) According to Yardi, the Magistrate Court incorrectly based its decision that Exhibit 473 was not privileged on the fact that the document had the "***potential*** purpose of being distributed to third parties." (ECF No. 332 at 6.) In Yardi's view, a document that is "drafted with the intent of being provide to a third party" only loses its privilege if it is actually "***provided to [the] third party.***" (ECF No. 332 at 7

10

(emphasis in original).) Entrata argues that Yardi mischaracterizes the Magistrate Court's order as concluding that Exhibit 473 was "***automatically* or *necessarily***" "not privileged simply because" it was prepared for the potential purpose of being distributed to third parties. (ECF No. 331 at 10 (emphasis in original).)

The court proceeds in its analysis under the assumption that the Magistrate Court's conclusion was premised on the belief that Exhibit 473 was automatically not privileged because it was prepared for the purpose of being distributed to third parties. A brief discussion regarding whether documents like Exhibit 473 are Privileged Attorney-Client Communications is helpful. "One lawyering task performed by an attorney is the preparation of legal instruments that are intended for ultimate dissemination (in their finalized forms) to third parties . . . ." Paul R. Rice, *Attorney–Client Privilege in the United States,* § 5.12 [West 2017]. It appears that the prevailing view is that until "a final version of the instrument has been approved by the client and disseminated, the contents of the drafts should remain confidential." *Id*. But "many cases can be found in which courts summarily deny the protection of the privilege to drafts of documents that are being prepared by counsel for distribution to third parties." *Id*. One such case appears to be *United States v. Bump*, 605 F.2d 548, 550–51 (10th Cir. 1979). In that case, the Tenth Circuit stated:

> An important element of the lawyer-client privilege is a showing that the communication was meant to be kept secret. When a matter is communicated to the lawyer with the intention or understanding it is to be repeated to another, the content of the statement is not within the privilege.

*Bump*, 605 F.2d at 550–51. *Bump* appears to remain good law in the Tenth Circuit. Thus, even if the Magistrate Court believed that Exhibit 473 was automatically not privileged because it was prepared for the purpose of being distributed to third parties, its decision was not contrary to law.

To summarize, the Magistrate Court's Order was not contrary to law because Exhibit 473 is not a privileged attorney-client communication and it does not reveal the substance of Anant Yardi's communications to Mr. Brier. Alternatively, the Magistrate Court's Order was not contrary to law because there is Tenth Circuit authority supporting the proposition that documents prepared by counsel for distribution to third parties are not privileged.

2. <u>Work Product</u>

Yardi argues that "[t]he work product doctrine also protects Exhibit 473, as the edits clearly reflect Mr. Brier's mental processes concerning subject matter that is indisputably linked to ongoing litigation." (ECF No 302 at 10 (citing ECF No. 237, Ex. 1; FRCP 26(b)(3)(A); and *Upjohn v. United States*, 449 U.S. 383, 400 (1981).) Yardi argues that "at the time Exhibit 473 was drafted, litigation had already been initiated between the parties" in a lawsuit in California, and argues that the letter "clearly constituted attorney word product" because it contains Mr. Brier's "professional judgment and legal advice regarding the potential disclosure of details about the ongoing California lawsuit with Entrata to mutual customers." (ECF No. 302 at 11.)

"It is well established that [Federal] Rule [of Civil Procedure] 26(b)(3) is the codification of the attorney work-product doctrine . . . ." *Moroughan v. The Cty. of Suffolk*, No. CV 12-512 JFB AKT, 2015 WL 5475989, at *5 (E.D.N.Y. Sept. 16, 2015); *see also .Neal v. Gen. Motors, LLC*, No. 2:14-CV-633-WKW-GMB, 2016 WL 9710087, at *2 (M.D. Ala. Dec. 13, 2016) ("Rule 26(b)(3) is a codification of the work-product doctrine derived from *Hickman v. Taylor*, 329 U.S. 495 (1946) . . . ."). Rule 26(b)(3) provides: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation . . . by or for another party or its representative . . . ." Fed. R. Civ. P. 26(b)(3)(A).

"Two factors must be present for the work product doctrine to apply: [1] there must be a threat of litigation and [2] there must be a motivational component. The document must have

been prepared because of that threat." Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine* 1082–83 Sixth Edition, Volume II (2017). The Magistrate Court knew or should have known Mr. Brier and Mr. Bustany drafted Exhibit 473, and that Exhibit 473 was about Yardi's ongoing California lawsuit with Entrata. In his declaration, Mr. Brier stated that he and Brady Bustany "created and edited a draft letter to Yardi's customers about Yardi's ongoing lawsuit with Entrata . . . ." (*See* Brier Aff. ¶ 2, ECF No. 244 at 2; *see also* Brier Aff. ¶ 3, ECF No. 244 at 3 ("I used my professional judgment . . . in drafting this letter, in part because it disclosed details about an ongoing lawsuit with Entrata to mutual customers.").) And the Magistrate Court's September 20, 2017 Order Governing Discovery of Electronically Stored Information reveals that the Magistrate Judge knew that Yardi was involved in an ongoing California lawsuit with Entrata. (*See* ECF No. 124 at 6.) The court is persuaded that because the California lawsuit was ongoing, the first requirement is met. The court next considers the "motivational component."

"In *McEwen*, Judge Greene adopted the 'primary motivating purpose' test for determining whether a document prepared for mixed purposes . . . is entitled to protection under the work product doctrine." *Chevron Pipe Line Co. v. Pacificorp*, No. 2:12-CV-287-TC-BCW, 2016 WL 10520301, at *4 (D. Utah Feb. 22, 2016) (citing *McEwen v. Digitran Systems, Inc.,* 155 F.R.D. 678, 682 (D. Utah 1994) (citing F.R.C.P. 26(b)(3)). As articulated by Judge Greene, "[i]f it appears that the materials were prepared for mixed purposes, the privilege is available 'only if the primary motivating purpose behind the creation of the materials was to assist in pending or impending litigation.'" *McEwen v. Digitran Sys., Inc.*, 155 F.R.D. 678, 682 (D. Utah 1994) (citation omitted). "This test restrains the work product privilege to its intended area—the attorney's workplace, in litigation preparation and strategy." *Adams v. Gateway, Inc.*, No. 2:02-

13

CV-106 TS, 2003 WL 23787856, at *9 (D. Utah Dec. 30, 2003). It is well established that "[m]aterials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work-product doctrine." *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 297 F.R.D. 611, 618 (D. Kan. 2014).

Exhibit 473 is a draft letter that discusses Yardi's ongoing California lawsuit with Entrata. (*See* ECF No. 240-1.) "[I]n contrast to the normal business, non-litigation purpose of preparing and issuing [a corporate report], the process by which an attorney selects the precise language to describe the litigation of his client in . . . a public document is most inevitably made with that litigation in mind." *Carey-Canada, Inc. v. California Union Ins. Co.*, 118 F.R.D. 242, 246 (D.D.C. 1986); *see also* Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine* 1147 Sixth Edition, Volume II (2017) ("Once litigation has in fact been initiated, any commentary on the course of that litigation by an attorney is most likely to be accorded work-product protection."). The evidence before the Magistrate Court was that Mr. Brier and "Senior Counsel Brady Bustany" "created and edited a draft letter to Yardi's customers about Yardi's ongoing lawsuit with Entrata . . . ." (Brier Aff. ¶ 4, ECF No. 244 at 2.) Because the evidence before the Magistrate Court was that Exhibit 473 was a draft letter written by Yardi's corporate counsel about ongoing litigation, the Magistrate Court should have found that the primary motivating purpose behind its creation was to assist in pending litigation and was therefore attorney work product.

3. <u>Waiver</u>

"The Federal Rules of Evidence ('FRE') set default standards governing the inadvertent disclosure of information that is subject to [work product protection] . . . ." *See Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 201 (E.D.N.Y. 2016) (citing

Fed. R. Evid. 502(b)).[2] "Under these standards, no waiver results from 'inadvertent' disclosure if the privilege holder 'took reasonable steps to prevent disclosure' and 'promptly took reasonable steps to rectify the error.'" *Id*. (quoting Fed. R. Evid. 502(b)). "Federal courts may, however, supplant the FRE's default standards in favor of more forgiving non-waiver provisions." *Id*. (citing Fed. R. Evid. 502(d)).[3]

In its Motion to the Magistrate Court, Yardi argued that Exhibit 473 was "inadvertently produced" and argued that "Yardi is entitled to claw it back." (*See* ECF No. 237 at 2-3.) In support, Yardi cited Federal Rule of Civil Procedure 26(b)(5)(B); Federal Rule of Evidence 502(d); and "Dkt. 32," the court's Stipulated Protective Order. (*See* ECF No. 237 at 3.) Similarly, in its Reply In Support of its Objection, Yardi argues that it "is entitled to claw [Exhibit 473] back" and cited those same provisions. (*See* ECF No. 302 at 9.)

As noted above, the Magistrate Judge entered a Stipulated Protective Order on April 30, 2015. (*See* ECF No. 32.) And, as noted above, the Stipulated Protective Order contains a provision titled "Inadvertent Production of Privileged or Otherwise Protected Material." (ECF No. 32 at 24.) That provision states, in part, that "[i]nadvertent or unintentional production of any

---

[2] Federal Rule of Evidence 502(b) provides:
**Inadvertent Disclosure.** When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
**(1)** the disclosure is inadvertent;
**(2)** the holder of the privilege or protection took reasonable steps to prevent disclosure; and
**(3)** the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

[3] Federal Rule of Evidence 502(d) provides:
**Controlling Effect of a Court Order.** A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court--in which event the disclosure is also not a waiver in any other federal or state proceeding.

document . . . subject to . . . work-product immunity shall not constitute a waiver of the . . . work-product immunity, if any, as they apply to those documents specifically or to the subject matter of those documents generally . . . ." (ECF No. 32 at 24.) The Stipulated Protective Order required Yardi to send Entrata "a written request for the return of" Exhibit 473 "within a reasonable time after determining that the documents should not have been produced." (*See* ECF No. 32 at 24 ("such Party *shall* provide a written request for the return of those documents" (emphasis added)).)

But in neither its Motion to the Magistrate Judge nor in its Reply in Support of its Objection did Yardi include any analysis explaining why it is entitled to claw Exhibit 473 back under the Stipulated Protective Order. Yardi has not provided the court with any argument that it submitted a written request to Entrata after it produced Exhibit 473 for the first time on September 30, 2017. Nor has Yardi argued that it sent a written request to Entrata after two iterations of Exhibit 473 were produced on May 1, 2018. Nor has Yardi argued that it sent Entrata a written request after the deposition of Anant Yardi and prior to filing its Motion for Claw Back. The court therefore has no way to know whether Yardi complied with the Stipulated Protective Order's requirement. Because the court lacks this information, Yardi has not demonstrated that it is entitled to claw Exhibit 473 back under the Stipulated Protective Order.

But even if Yardi could demonstrate that it had complied with the Stipulated Protective Order's requirement, it would still not be entitled to claw Exhibit 473 back. The Stipulated Protective Order and Federal Rule of Evidence 502(d) "apply only to waiver in connection with *disclosures*, and say nothing of waiver by other means." *See Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 201 (E.D.N.Y. 2016) (emphasis in original). "Accordingly, while an appropriately worded protective order may prevent waiver due

16

to a producing party's *disclosure* of privileged information, that party's subsequent failure to timely and specifically object to the *use* of that information—during a deposition, for example—*can* waive any applicable privilege." *Id*. (emphases in original).

Here, Yardi "has waived . . . work-product protection for" Exhibit 473 "by failing to seek to preclude [its] introduction and use at" Anant Yardi's deposition." *Id*. Entrata introduced Exhibit 473 at Anant Yardi's deposition and "questioned [him] about [it] for [at least] several pages of transcript." *See id*. The portion of the transcript that was provided to the court demonstrates that Yardi's counsel did object to some of Entrata's questions about Exhibit 473, (ECF No. 262-10 at 4–7) but "nevertheless permitted questioning about the document to proceed." *Certain Underwriters*, 218 F. Supp. 3d at 202. "Generalized objections of this kind are insufficient to preserve a claim of [work product protection]." *See id.* (citing *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 214CV00772GMNNJK, 2016 WL 3654285, at *2–3 (D. Nev. July 5, 2016); *United States v. Wells Fargo Bank, N.A.*, No. 12-CV-7527 JMF, 2015 WL 5051679, at *4 & n. 6. (S.D.N.Y. Aug. 26, 2015).

The Stipulated Protective Order did provide that "[i]f the Producing Party discovers that . . . work-product . . . ha[s] been inadvertently produced based upon the Receiving Party's use of such information during a deposition . . . the Producing Party may orally request the return of the information and the Receiving Party must immediately cease examination or argument regarding the specific substantive content of the document." (ECF No. 32 at 24-25.) The Order therefore allowed Yardi to request that Entrata return Exhibit 473 and would have required Entrata to cease asking Anant Yardi questions about Exhibit 473. Nothing in the portion of the transcript provided to the court indicates that Yardi requested that Entrata return Exhibit 473. Nor has Yardi argued in its Objection that it, during the deposition, requested that Entrata return Exhibit

17

473. Yardi waived work product protection by allowing Exhibit 473 to be used at Anant Yardi's deposition.

### III.    Conclusion

For the foregoing reasons, the court DENIES Yardi's Objection. Entrata's request for attorney's fees is also DENIED.

DATED this 29th day of October, 2018.

BY THE COURT:

Clark Waddoups
United States District Judge