# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ENTRATA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>YARDI SYSTEMS, INC., a California corporation<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON ENTRATA, INC.'S EMERGENCY MOTION TO STRIKE YARDI'S SUPPLEMENTAL EXPERT REPORTS<br><br>Case No. 2:15-cv-00102<br><br>Judge Clark Waddoups |

Before the court is Plaintiff Entrata, Inc.'s Emergency Motion to Strike Yardi's Supplemental Expert Reports of Gordon Rausser and Richard Hoffman, (ECF No. 456). Entrata's Motion is well-taken. As discussed below, the court finds that Yardi has acted in bad faith. Sanctions are appropriate and will be issued. However the court declines to strike the expert reports at this time. The court sets a hearing to determine the appropriate sanctions.

## Background

"Entrata and Yardi are each software and technology companies, and each makes and sells various competing property management software products." (Am. Compl. ¶ 6, ECF No. 55 at 3.) According to Entrata, it "was the first comprehensive property management software provider to offer a single-login, open-access, 'Platform as a Service' (PaaS) system." (Am. Compl. ¶ 9, ECF No. 55 at 4.) "PaaS systems provide for a range of functionalities, such as marketing available units, processing rental applications, organizing and storing resident information, taking and responding to maintenance requests from residents, managing utility usage and costs, and processing rent payments . . . ." (Am. Compl. ¶ 9, ECF No. 55 at 4–5.) Entrata states "[t]hese features of a PaaS system are made possible through integration with a

separate core **accounting** software service." (Am. Compl. ¶ 9, ECF No. 55 at 5 (emphasis added).)

"Shortly after its founding," Entrata's "primary focus" was on "property website management [products] that were designed for use with existing third-party core **accounting** database software products (such as Yardi's Voyager Residential software product,)" (Voyager). (Am. Compl. ¶ 14, ECF No. 55 at 4 (emphasis added).) According to Entrata, "Yardi is the dominant provider of core **accounting** database software for use by the multi-family housing industry in the United States." (Am. Compl. ¶ 18, ECF No. 55 at 8 (emphasis added).) According to Entrata, "[i]n 2003, when [it] was founded, Yardi had already long been, since 1984, in the business of providing property management *accounting* software." (Am. Compl. ¶ 20, ECF No. 55 at 9 (emphasis in original).) Entrata asserts that "Yardi's products did *not* then include specialized tools or integration products . . . focused on providing services to residents and prospective residents, such as . . . rental applications, payments, and maintenance request processing." (Am. Compl. ¶ 20, ECF No. 55 at 9 (emphasis in original).)

Entrata further alleges that "[a]s a result of the limitations of Yardi's core accounting software products . . . and for Yardi's own benefit to enable it to meet the needs and demands of its customers, Yardi—at least initially—actively encouraged third parties, including Entrata, to develop specialized modules or plug-ins to interface with Yardi's core accounting software, including Voyager." (Am. Compl. ¶ 20, ECF No. 55 at 9.) Entrata alleges that when "third-party integration products (including products offered by competitors such as Entrata) began to threaten Yardi's dominance and control in the market for core accounting and property management database software, Yardi responded by" "undertaking initiatives to damage and/or undermine the performance and marketability of those third-party integration products." Yardi

also allegedly responded by "undertaking to expand beyond its original core accounting software (*i.e.*, Voyager) and offering products intended to leverage Yardi's existing dominance in core accounting software into the adjacent product category for integration products, thereby supplanting those competitors who offered third-party products that posed a threat to Yardi's dominance . . . ." (Am. Compl. ¶ 21, ECF No. 55 at 9–10.)

Entrata began working with Yardi in 2004. (*See* Am. Compl. ¶ 26, ECF No. 55 at 15.) Entrata alleges that "Yardi had . . . been more than happy to encourage an ecosystem of software developers . . . to invest in creating complementary software products that enhanced the value of the Yardi core accounting software" but "Yardi began to change course as early as 2008-2009 as those firms began to mature and Yardi sensed a potential threat to competition." (*See* Am. Compl. ¶ 42, ECF No. 55 at 20.)  Entrata alleges that, to quell these threats, Yardi engaged in a "pattern of unfair, unlawful, and anti-competitive actions against" Entrata. (Am. Compl. ¶ 7, ECF No. 55 at 3.)

<u>yCRM Data and Expert Reports</u>

On August 4, 2017, Magistrate Judge Warner entered an Order requiring the parties to "substantially complete document productions" by September 29, 2017. (*See* ECF No. 115.)  On October 6, 2017, Entrata filed a Motion alleging that "Yardi willfully failed to comply with the September 29 deadline for substantial completion of document productions" by dumping "about *1.3 million* documents" on Entrata on that date. (*See* ECF No. 129 at 2 (emphasis in original).) On November 17, 2017, Magistrate Judge Warner "ordered" Yardi "to review its September 29, 2017 document production and produce to" Entrata "only those documents that [were] responsive to" Entrata's discovery requests. (*See* ECF No. 162 at 4.) According to Entrata, Yardi's reproduction consisted of 161,112 documents, but Entrata was nevertheless forced "to

3

continue to incur the cost and burden of searching and reviewing Yardi's original, massive document dump to identify relevant documents." (ECF No. 177 at 11 n. 5.)

On December 7, 2017, Entrata sent Yardi a letter complaining that there was a gap in Yardi's document production relating to its "yCRM database." (*See* ECF No. 171-6.) "yCRM" "stands for 'customer relationship management.'" (Schindelbeck Decl. ¶ 6, ECF No. 453-23 at 4.) The yCRM Database is a tool Yardi uses to manage its "relationships and interactions with its customers and potential customers." (Schindelbeck Decl. ¶ 6, ECF No. 453-23 at 4.) In the yCRM database, Yardi "classifies Companies by what Yardi believes their predominant business to be, such as commercial, multi-family, single-family, affordable housing, student housing, manufactured housing, military housing, senior housing, or condo/co-op, or the opportunities [Yardi] believe[s] are relevant to [its] business." (Schindelbeck Decl. ¶ 6, ECF No. 453-23 at 5–6.)

In its December 7, 2017 letter, Entrata stated that it "thoroughly searched Yardi's massive document production" and had not found yCRM data it believed was "highly relevant and responsive to [its] discovery request." (*See* ECF No. 171-6 at 2.) Based on its review of Yardi's production, Entrata believed "any yCRM data produced to date [was], at best, extremely incomplete." (ECF No. 171-6 at 3.)

On December 18, 2017, Yardi, through one of its attorneys, Matthew Richards, responded to Entrata's letter. (*See* ECF No. 171-2 at 8.) Matthew Richards appears to have taken the position that Yardi had presented the yCRM data in the same format that Entrata had disclosed its "customer relationship management database" to Yardi (ECF No. 171-2 at 8.) On January 30, 2018, Matthew Richards wrote an email to Entrata's lead counsel, David Cross regarding yCRM data, stating that "Yardi ha[d] met its document production obligations." (ECF

No. 171-2 at 2.) On January 31, 2018, David Cross replied in an email and specifically addressed Matthew Richard's letter and his statement about Entrata's customer relationship management database. (*See* ECF No. 171-2 at 2.) Mr. Cross wrote:

> As I explained on Friday, we're happy to consider any argument that Entrata has not produced all the data it was obligated to produce, although we've no reason to believe that's the case. I invited you to identify — just as we did regarding Yardi's yCRM database — (1) the categories of data you believe exist and are responsive to your requests; (2) the discovery requests you contend call for that data; and (3) testimony and/or documents establishing that those categories of data actually exist. Although we provided this information in detail regarding Yardi's yCRM database, you've provided no such information regarding any database maintained by Entrata.

(ECF No. 171-2 at 2.)

On February 7, 2018, Entrata filed a Motion Regarding Yardi's Client Relations Management Database (yCRM), (ECF No. 171). In this Motion, Entrata sought "to compel production" of responsive yCRM data from Yardi. (*See* ECF No. 171 at 2.) In this Motion, Entrata stated that the yCRM data "is highly relevant to such issues as market definition, market power, and injury to competition." (ECF No. 171 at 2.)

In support of this Motion, Entrata included a declaration of Dr. James R. Kearl, one of Entrata's experts retained "to evaluate economic issues related to Entrata's antitrust and tort claims against Yardi . . . ." (*See* Kearl Decl. ¶ 3, ECF No. 171-4 at 2.) In this declaration, Dr. Kearl explained "why the data in the Yardi yCRM database" was "important for [his] economic analysis in this matter." (*See* Kearl Decl. ¶ 4, ECF No. 171-4 at 3.) Dr. Kearl stated:

> In this matter, Entrata alleges a relevant market where the customers are Enterprise-level (managing >1,000 units) conventional multifamily property managers. I understand the yCRM data would allow me to distinguish between customers who are in the alleged market and those that are not . . . For instance, the yCRM data appear to distinguish between conventional multifamily managers and managers of specialty multifamily housing (e.g. student, affordable, military, etc.).

(*See* Kearl Decl. ¶ 5, ECF No. 171-4 at 3.) Dr. Kearl further provided that "[t]he yCRM data also appear to contain information on Yardi customers and prospective customers, wins/losses against competitors, the customers' product usage of Yardi and non-Yardi products, customer unit information, customer billing, revenue, and pricing information." (Kearl Decl. ¶ 6, ECF No. 171-4 at 3–4.) Dr. Kearl also stated that this information was "relevant to market definition and market share." (*See* Kearl Decl. ¶¶ 7–10, ECF No. 171-4 at 4–5.)

On February 14, 2018, Yardi filed its Opposition to Entrata's Motion. (ECF No. 174.) In this Opposition, Yardi represented that it had "searched for, identified, and produced documents from Yardi's yCRM system and other common company locations" that were responsive to Entrata's requests for production. (ECF No. 174 at 2–3.) Yardi also represented that it had "met its discovery obligations." (ECF No. 174 at 3.) On March 27, 2018, Yardi filed a Supplemental Memorandum in Opposition to Entrata's Motion in which it stated that it was "not hiding information." (ECF No. 200.)

On April 3, 2018, Entrata filed its Reply in support of its Motion. (ECF No. 206.) In this Reply, Entrata alleged that "Yardi [had] not disputed any of the following facts:"

- ***Yardi has not produced responsive data*** contained in its yCRM database regarding such highly relevant issues as customer pricing, unit counts, wins and losses, revenue, and communications (Dkt. No. 179 at 5-6);

- Yardi has produced ***only*** reports that its employees chose to generate from the yCRM database ***only for business purposes*** wholly unrelated to this litigation and thus ***without any regard to what yCRM data is relevant to this litigation*** (Opp. at 2-3);

- Those reports and the other tens of thousands of documents Yardi misleadingly cites as containing responsive information contain ***only some*** (in fact, only a fraction) of the relevant, responsive yCRM data (Dkt. No. 179 at 9; Dkt. No. 171-4 ("Kearl Decl."));

- The little data contained in the documents Yardi cites is ***historical*** and thus does not provide the ***current*** or even ***accurate*** information that the withheld data would provide because the data changes significantly over time (Dkt. No. 179 at 9-10);

- Yardi could easily produce the responsive yCRM data it is intentionally withholding as a data file or report for a fraction of the time and expense it has forced Entrata (and now this Court) to incur in seeking this important information (Dkt. No. 179 at 3);

- The burden and expense for Entrata to cobble together yCRM data dwarfs the burden and expense for Yardi to produce the requested yCRM data in a single, comprehensive file or report (*id.*); and

- The yCRM data produced and cited by Yardi yields only an incomplete, outdated, and inaccurate data set because it is dispersed across tens of thousands of overlapping, inconsistent, and conflicting reports generated by different employees, at different times, looking at different sets of fields and containing changing data over a period of several years (*id.* at 9-10).

(ECF No. 208 at 5–6 (emphases in original).)

On May 4, 2018, Magistrate Judge Warner issued an Order requiring that "the yCRM data . . . be produced pursuant to Rule 34 to the extent any data is responsive to Entrata's requests for production." (ECF No. 212 at 3.) Magistrate Judge Warner ordered Yardi to "produce any yCRM data that is responsive to Entrata's request for production within fourteen (14) days of the date of this order." (ECF No. 212 at 3.)

According to Entrata, in response to Magistrate Judge Warner's order, "Yardi produced fourteen data files on May 18, 201[8]," which it—"[a]t the time"—"represented to be all the responsive portions of Yardi's yCRM database . . . ." (Cross Decl. ¶ 2, ECF No. 252 at 2.) Entrata's review of Yardi's May 18, 2018 yCRM production led Entrata to believe that Yardi's production was incomplete. (*See* Cross Decl. ¶ 3, ECF No. 252 at 2.) On May 23, 2018, one of Entrata's attorneys, Robert Manoso, sent one of Yardi's attorneys, John Foote, an email stating, in relevant part:

> In addition, our experts have determined that there are many companies reported as having residential units in the [Top Companies Report] that are not included in *either* the Companies or Clients files produced from the yCRM database . . . In summary . . . it appears that companies representing nearly 1.2 million residential

units are not included in the yCRM database. By the end of the day today, please supplement your yCRM production with this additional data as required by the Court's Order.

(ECF No. 252-3 at 4.)

In this email, Robert Manoso further provided:

Yardi failed to comply with Entrata's requests and delayed for months. The Court rejected Yardi's arguments as meritless and ordered production. Yardi's deliberate, continued non-compliance and delay now means Yardi has willfully violated the Court's Order. We have been and continue to be willing to work with you to help get us the data we are entitled to, but our efforts have been rebuffed at every turn, resulting in more delay. Please comply with the Court's Order today.

(ECF No. 252-3 at 5.)

One of Yardi's attorney's, John Foote, responded to this email that same day, stating, in relevant part that Yardi had "complied" with Magistrate Judge Warner's May 4, 2018 Order and further stating that "the yCRM data Yardi produced contain[ed] all responsive relevant information regarding unit counts, and 100% of the companies that [Entrata] identified as appearing in the top companies report do not appear in the yCRM data produced for good and sufficient reasons." (ECF No. 252-3 at 3–4.)

On May 25, 2018, Entrata filed an Emergency Motion in which it argued that Yardi had not complied with Magistrate Judge Warner's May 4, 2018 order. (*See* ECF No. 248.) In this Motion, Entrata argued that "Yardi's Court-Ordered production excludes extensive responsive data, including updated data contained in Yardi's so-called Top Companies Reports . . . which Yardi acknowledged came *from yCRM*." (ECF No. 248 at 2 (emphasis in original).) In support of this Motion, Mr. Cross, Entrata's lead counsel, stated that "the data produced on May 18 appears to be missing any information for approximately 360 companies, which total nearly 1.2 million residential units." (Cross Decl. ¶ 8, ECF No. 252 at 8.)

On June 4, 2018, Yardi submitted its Opposition to Entrata's Motion, arguing that it did comply with Magistrate Judge Warner's May 4, 2018 order and arguing that "the absence of all 366 companies" "in the May 18 yCRM data" "was *entirely proper*." (*See* ECF No. 264 at 4 (citing Foote Decl. ¶ 11, ECF No. 264-1) (emphasis in original).) In support of its Opposition, Yardi submitted a declaration of John R. Foote, "a Senior Counsel in the firm of Nixon Peabody, LLP." (Foote Decl. ¶ 1, ECF No. 264-1 at 2.) Mr. Foote submitted this declaration under penalty of perjury. (Foote Decl. ¶ 14, ECF No. 264-1 at 12.) Mr. Foote explained why Yardi had not disclosed the 366 companies to Entrata:

> [I] point[ed] out that all yCRM data could not possibly be responsive because the yCRM data is not limited to what is at issue in this case—*i.e.*, multifamily residential clients, products and services—but rather includes voluminous data relating to all of Yardi's products and services (including for example, software and services related to commercial properties, student housing, affordable housing, military housing, etc.—***none of which are at issue in this case***."

(Foote Decl. ¶ 6, ECF No. 264-1 at 5. (emphasis added).)[1]

John Foote also addressed his response to Robert Manoso's email. John Foote stated that he "contacted Yardi's experts to whom the yCRM data had been sent on May 18, forwarded them Mr. Manoso's accusatory E-mail, and asked them to confirm, without any assistance from Yardi or me, that the yCRM data they have received contained the types of data Mr. Manoso claimed were not there. Later that afternoon I spoke with Yardi's experts for the first time regarding the yCRM data." (Foote Decl. ¶ 10, ECF No. 264-1 at 9.) John Foote further represented:

> Yardi's experts did . . . confirm that the 366 companies identified by Entrata's experts as appearing in the [Top Companies Reports] but not in the yCRM data

---

[1] Here, John Foote justifies not producing data related to what Yardi would later characterize as "niche" markets because those markets "are [not] at issue in this case." (Foote Decl. ¶ 6, ECF No. 264-1 at 5.) But, as explained below, Yardi later explained that the data contained in the Portfolios for these "niche" markets includes companies that have multi-family units—which Yardi later admits ***are relevant*** to this case. (*See* ECF No. 461-5 at 10.) John Foote submitted this declaration under penalty of perjury. These inconsistent positions are not well-taken.

was correct. I immediately contacted Yardi about this issue, and also shared with Yardi the analysis by Entrata's expert attached to Mr. Manoso's May 23 E-Mail, as well as the confirmation by Yardi's experts that the 366 companies identified by Entrata's expert were not found in the yCRM data received by Entrata. Within a short time, Yardi reviewed the list and confirmed to me that 100% of these companies—all 366—did not appear in the yCRM data produced to Entrata *because they fell outside the scope of relevant, responsive information. The vast majority simply were not listed in the yCRM as multi-family residential companies, but rather as other property management companies or portfolio owners that have never been at issue in this case*, such as companies that handle affordable housing, HOAs, Condos, Co-ops, commercial office and retail space, Senior Housing, Student Housing, and single family homes.

(Foote Decl. ¶ 11, ECF No. 264-1 at 9–10 (emphasis added).)[2]

As discussed below, Magistrate Judge Wells ultimately ruled on Entrata's Motion in October of 2018. The scheduling order required the initial expert reports to be filed on or before July 23, 2018. (ECF No. 285.) As required by the scheduling order, Entrata's Expert, Dr. Kearl, submitted his Expert Report on July 23, 2018. (ECF No. 461-21 at 56.) Dr. Kearl was required to file his report prior to Magistrate Judge Wells ruling on the yCRM data. Thus, as Dr. Kearl noted in his Expert Report, Dr. Kearl's report was made without the benefit of the yCRM data that Yardi was withholding. (*See* ECF No. 461-21 at 33 n. 127 ("Yardi has produced some of the data upon which the [Top Companies Reports] are based (the 'yCRM' data) although that production does not appear complete. Thus, at this time I rely on the historical TCRs (from 2016 and 2017).").)

On August 27, 2018, Dr. Gordon Rausser, one of Yardi's experts, submitted his "Expert Reply Report" to Dr. Kearl's July 23, 2018 report. (*See* ECF No. 461-16 at 7.) Dr. Rausser noted that Dr. Kearl had relied on the Top Companies Report. (*See* ECF No. 461-16 at 30 ("Many of Dr. Kearl's relevant market inferences are based upon a Top Companies Report prepared by the

---

[2] Again, as explained below, Yardi later admitted that even if Yardi did not designate a company's Portfolio as "multi-family," many "niche" market companies have multi-family units in their portfolios. Yardi's decision to omit this fact in June of 2018 is not well-taken.

Yardi sales team in March 2017 . . . .").) Dr. Rausser appears to have criticized Dr. Kearl for relying on the Top Companies Report, stating that "it is a crude and inappropriate tool for defining relevant markets . . . ."[3] (ECF No. 461-16 at 31.) Dr. Rausser also argued that Dr. Kearl's reliance on the Top Companies Reports was misplaced because it "includes multifamily as well other housing types not relevant to this case." (ECF No. 461-16 at 30.) Here, Dr. Rausser echoed the declaration of John Foote, who, as noted above, submitted a declaration to the court stating that companies that "handle affordable housing, HOAs, Condos, Co-Ops, commercial office and retail space, Senior Housing, Student Housing, and single-family homes" "have never been at issue in this case." (Foote Decl. ¶ 11, ECF No. 264-1 at 10.) It is important to note that when Dr. Rausser submitted his Reply Report substantially all of the yCRM data, that he now relies upon, was available from Yardi and could have been accessed and used if Yardi had produced it.

On September 5, 2018, the parties began negotiating an extension of the schedule. (*See* ECF No. 461-1 at 16.) These negotiations largely centered around scheduling expert reply and supplemental reply reports. (*See* ECF No. 461-1.) In these negotiations, Yardi's lead counsel sought to allow experts in the case file Supplemental Expert Reports based on "new information produced by either party in connection with the Special Master's review or any other Court order . . . ." (*See* ECF No. 461-1 at 15.) A principal focus of the decision was that upon review by the Special Master of the documents claimed as attorney client privileged, a number of additional documents would be produced that may be relevant to the experts' analysis.[4] There were also

---

[3] Dr. Rausser omitted that Dr. Kearl was forced to use the Top Companies Report because Yardi was withholding relevant yCRM data.

[4] This court previously noted that "Entrata ha[d] alleged that 'Yardi continues to claim 4,826 documents' 'are privileged.'" (ECF No. 323 at 9.) According to the Special Master's first Order, after the court ordered special master review of Yardi's documents, Yardi "voluntarily produced" to Entrata 2,667 "records" thus significantly

still unresolved issues about the yCRM data. Yardi was concerned that the original schedule of expert reports "would only give Entrata's experts an opportunity to incorporate additional information into their Reply reports with no opportunity for" Yardi's experts to respond. (ECF No. 461-1 at 13.) Just before the parties reached a compromise regarding the schedule, Yardi's lead counsel sent Entrata's lead counsel an email stating:

> To make things more efficient administratively, we think we also should include in the scheduling order the requirement that the October 31 reply reports indicate (by citation or otherwise) the points at which the expert is relying on newly produced information. This will help keep the supplemental reports focused upon responding to the new information, consistent with what I understand to be both parties' intent. Please let us know what you think.

(ECF No. 461-1 at 3[5].)

On September 11, 2018 the court entered an order setting a deadline for expert reply reports and a deadline for "supplemental reply reports (limited to new discovery)." (ECF No. 365 at 1.) The order also provided:

> In the Expert Reply Reports, the experts are to be instructed to note, via citation or otherwise, when they are referring to or relying upon new discovery material (i.e., discovery produced after the date of this Stipulated Order). This is to allow the parties and experts to more easily identify the materials that may properly be discussed in the Supplemental Reply Reports.

(ECF No. 365 at 2.)

On October 11, 2018, Magistrate Judge Wells entered an Order finding that Yardi had not complied with Magistrate Judge Warner's May, 2018 Order. (ECF No. 380.) Magistrate Judge Wells ordered Yardi "to produce all responsive data as set forth in the court-ordered production."

---

reducing the number of documents claimed privileged. This left the special master "to review 1,773 records." (ECF No. 390 at 2.) In his first Order, the Special Master found that approximately 35 of the 1,773 records that Yardi produced to him were not privileged. (*See* ECF No. 390.) The special master also reviewed 1,730 documents from Yardi's "Second Set." (ECF No. 425.) Of the second set, the Special Mater found that roughly 70 records were not privileged.

[5] As Entrata points out, the deadlines later shifted. The October 31 Reply Report deadline and the November 19 Supplemental Reply Report deadline later moved to December 7 and February 8, respectively.

(ECF No. 380 at 5.) Magistrate Judge Wells also ordered Yardi "to file one or more signed declarations, within thirty (30) days from the date of [the] order," detailing "background into the methodology for the production" of the yCRM database. (ECF No. 380 at 5.) Magistrate Judge Wells also ordered a 30(b)(6) "deposition where Entrata [could] ask questions regarding the yCRM data, its production, methodology, and questions regarding missing data following the production of any additional yCRM data by Yardi." (ECF No. 380 at 5.)

In response to Magistrate Judge Wells' Order, Yardi sent to Entrata a "Submission of Information" regarding yCRA data on November 9, 2018. (*See* ECF No. 461-5 at 2.) On this date, Yardi also submitted a Declaration of Fritz Schindelbeck, Yardi's Senior Vice President.

In these submissions, Yardi provided information regarding the yCRM data. For example, Mr. Schindelbeck explained that the yCRM data is information that Yardi collects about companies, clients, and potential clients. (Schindelbeck Decl. ¶ 6, ECF No. 453-23 at 4.) Yardi explained that it classifies these companies "on which it collects data," "based upon" "property types." (*See* ECF No. 461-5 at 7.) These classifications appear in the yCRM data as "Portfolios." (*See* ECF No. 461-5 at 7.) These Portfolios include "conventional multi-family dwelling residential housing"—the property type at issue in this case. (*See* ECF No. 461-5 at 6.) But Yardi also classifies other property types, including "commercial properties such as office buildings and other specialty or 'niche' forms of housing, such as student housing, affordable housing, senior housing, military housing, and others." (ECF No. 461-5 at 6–7). Yardi explained that just because it classifies a company's "predominant operation" as being in a "niche" market does not mean that that company does not also manage property types that would be considered "conventional multi-family dwellings."

In Yardi's November 9, 2018 submissions, it explained why it believed it had complied

with Magistrate Judge Warner's May 4, 2018 order. Yardi explained that it had previously "believed that it was required to produce data relating only to the Companies that [Yardi] classified as multi-family Companies in the yCRM Database." (ECF No. 461-5 at 10 n. 4.)

In order to fully comply with Magistrate Judge Wells' October 11, 2018 Order, Yardi explained that "[t]he New yCRM Data" was "selected to include Companies that have *any* multi-family units in their portfolio." (ECF No. 461-5 at 10 (emphasis added).) In other words, Yardi represented that it would include companies "even if [the company's] Portfolio designation [was] not multi-family." (ECF No. 461-5 at 11; *see also* ECF No. 461-5 at 7 ("Yardi interprets [Magistrate Judge Wells'] 10/11/18 Order broadly and is responding with a comprehensive new yCRM data production. That data includes all Companies recorded as managing *any* multi-family residential units (no matter how few) . . . .") (emphasis added)). Yardi produced its "new yCRM data" to Entrata on November 9, 2018. According to Yardi, there "were 37,863 Companies and 12,205 Clients in the New yCRM Data. 28,800 of these Companies and 7,004 of these Clients also appeared in the prior production." (ECF No. 461-5 at 11.)

Yardi certified that this production of new "yCRM data fully complies with the Magistrate's October 11 order to the best of Yardi's understanding, information, and belief." (ECF No. 461-5 at 6.) But included in Yardi's November 9, 2018 production was yCRM data that Entrata's counsel names "Portfolio table (SCURRENTSYSTEM)." (*See* ECF No. 461-13 at 4.) As explained further below, the Portfolio table that Yardi produced on November 9, 2018 was incomplete.

After Yardi's November 9, 2018 production of some of the relevant yCRM data, the parties began to negotiate a date for the (court-ordered) deposition of Yardi's 30(b)(6) witness. (*See* ECF No. 470-6.) In these negotiations, Entrata's lead counsel noted that Entrata would need

its questions about the yCRM data answered "before the next round of expert reports are done."

(ECF No. 470-6 at 4.) In response, Yardi's lead counsel sent an email on November 14, 2018,

stating in relevant part:

> Our 30(b)(6) deponent is not available until early January, due to a serious
> medical issue. If you truly are concerned about expert reports, note that the
> Court's 9/11/18 scheduling order provides that the February 1, 2019 reports are to
> address 'new discovery,' which is precisely what we're dealing with here. Your
> experts thus have more than enough time to consider the yCRM data, and an early
> January 30(b)(6) deposition, before completing their reports.

(ECF No. 470-6 at 3.) Importantly here, Yardi made clear that it would not make its (again,

court-ordered) 30(b)(6) witness available until January 2019—after the expert reply report

deadline of December 7, 2018. Entrata's counsel responded on November 15, 2018, stating, in

relevant part:

> [W]e were operating under the understanding that you would insist that our
> experts address the yCRM data in their December reports. Given those are only
> three weeks away and there's a major, intervening holiday, too little time
> remained.
>
> In light of your position now, however, that our experts need not address Yardi's
> yCRM data and the related submissions (together, "yCRM Information") until
> their February 1, 2019 reports, we will withdraw the present notice and conduct
> the deposition in January as you proposed. We understand that Yardi will not
> object to any of our forthcoming expert reports on the ground that any analysis,
> consideration, or discussion of the yCRM Information is untimely.

(ECF No. 470-6 at 2.)

On December 7, 2018, Dr. Kearl submitted a reply report. (*See* ECF No. 461-22 at 55.) In

this report, Dr. Kearl did not address the yCRM data that Yardi produced on November 9, 2018.

Dr. Kearl did state that "I also understand that the parties will be submitting supplemental reports

on February 1, 2019 to incorporate information (both data and documents) that has been recently

produced." (ECF No. 461-22 at 5.) According to one of Entrata's experts, Dr. Gregory Adams,

"Dr. Kearl did not address the yCRM data" Yardi produced in November because "Yardi had not

responded to [Entrata's] questions regarding the yCRM data, the Rule 30(b)(6) deposition about these data had not yet taken place, and the Yardi depositions regarding the new Yardi documents had not yet occurred." (Adams Decl. ¶ 4, ECF No. 462 at 3.)

As noted above—and contrary to Yardi's claim that it had produced all "new" yCRM data that had "any multi-family units in their portfolio" (ECF No. 461-5 at 10)—Yardi's November 9, 2018 production was incomplete. On December 18, 2018, an attorney for Entrata sent Yardi's lead counsel an email stating that Entrata's experts had "discovered yet another exclusion of responsive, relevant data from Yardi's yCRM production." (ECF No. 461-13 at 4.) In this email, Entrata's attorney explained that Yardi had included a "Portfolio table" in its November 9, 2018 production. (ECF No. 461-13 at 4.) Yardi included a "current system field" in this Portfolio table, but Yardi did not include a "prior system field." (ECF No. 461-13 at 4.) Yardi produced the Portfolio Table with the prior system data on December 21, 2018 in a file labeled "PORTFOLIO2." (*See* ECF No. 461-13 at 2.) Again, to be clear, Yardi produced this data after Dr. Kearl's December 7, 2018 expert report.

On February 8, 2019, Dr. Kearl submitted his supplemental expert report. (*See* ECF No. 461-9 at 8.) In this report, Dr. Kearl noted that Yardi had "produced new documents and data and provided additional deposition testimony of certain of its employees that [he] was not able to consider for the analyses and opinions contained in [his] prior reports in this matter . . . ." (ECF No. 461-9 at 3.) In this report, Dr. Kearl considered the "new" yCRM data that Yardi produced in November and December of 2018 and concluded that his "review and analyses of the New Yardi Information indicate[d] that that information further support[ed] [his] original opinions." (ECF No. 461-9 at 3.) But in Dr. Kearl's supplemental expert report, he does not appear to address the data contained in Portfolio2. (*See* ECF No. 461-9.)

On February 8, 2019, Dr. Rausser submitted his Supplemental Expert Report. (*See* ECF No. 461-3 at 2.) In this report, Dr. Rausser states that "[t]o the extent relevant, [his] report considers and relies upon the materials produced since November 9, 2018 . . . ." (ECF No. 461-3 at 5.) In this report, Dr. Rausser argued that "[t]he updated yCRM data disproves Dr. Kearl's relevant market definitions." (ECF No. 461-3 at 7.) Rausser argued that "Dr. Kearl simply assumes, with no data or analysis, that software used in managing conventional multifamily residential properties is sold in a market different than software used for other types of residential properties such as student housing, senior housing, military housing, manufactured housing, and condominiums." (ECF No. 461-3 at 8.) Dr. Rausser further argued: "[t]he updated yCRM data establishes that a large portion of the companies tracked by Yardi operate across these classes of housing, managing multiple property types. Dr. Kearl has done nothing to evaluate how, or if, this influences their software purchasing decisions." (ECF No. 461-3 at 9.)

On February 14, 2019, Entrata filed its Motion to Strike the Expert Reports of Gordon Rausser and Richard Hoffman. (*See* ECF No. 460.) Entrata argued that Yardi's supplemental reports violate the court's September 11, 2018 Order. (*See* ECF No. 460 at 4.) Entrata argued that Yardi could not show that its Supplemental Reports are justified and harmless.

On February 19, 2019, Yardi filed its Opposition. (ECF No. 472.) Yardi argues that "the parties agreed that the supplemental reports would address new discovery, and would not be limited as Entrata currently contends." (ECF No. 472 at 7.) Alternatively, Yardi argues that "even if there were no agreement, Yardi's experts' [supplemental reply reports] were proper under Rule 26(e)(2)." (ECF No. 472 at 10.) Yardi ignores the fact that substantially all of the data Dr. Rauser relies on to criticize Dr. Kearl's report was available at Yardi and could have been used by him at the time he prepared and filed his August 2018 report. At the same time that

same data was not available to Dr. Kearl. Had Yardi produced that data to Dr. Rausser and

Entrata as it was required to do, the current dispute could have been avoided. Yardi offers no

explanation as to why Yardi did not produce the data that it controlled—data that it now argues

is relevant to the experts' opinions.

In support of its Opposition, Yardi submitted a declaration of Joseph A. Milbury, "an

Associate at OnPoint Analytics., Inc." (Milbury Decl. ¶ 1, ECF No. 472-6 at 2.)  In his

declaration, Mr. Milbury "notes that Dr. Kearl . . . selectively used [the additional yCRM] data"

to pick "just the few new fields that might support his hypotheses and ignor[ed] the rest."

(Milbury Decl. ¶ 5, ECF No. 472-6 at 4.)  Mr. Milbury further stated that Dr. Kearl "chooses to

ignore the universe of additional Companies and Clients produced as a result of the broadened

scope requested by Entrata, which encompassed *any* Company with even a single multifamily

residential unit." (Milbury Decl. ¶ 5, ECF No. 472-6 at 5 (emphasis in original).)

On February 20, 2019, Entrata filed its Reply. (ECF No. 480 at 1.) In its Reply, Entrata

argued that "Yardi's characterization" of the court's September 11, 2018 Order "contradicts its

plain terms, which narrowly limit supplemental reply reports," and argued that "the parties

expressly agreed that *Entrata's* experts could address the new discovery in supplemental reply

reports due to Yardi's delays." (ECF No. 480 at 4–5 (emphasis in original).) Entrata requested

that the court "strike Yardi's Supplemental Reply Reports and all other expert analyses and

opinions Yardi has produced since December 7, 2018, and preclude any testimony about any

such analyses or opinions." (ECF No. 480 at 4.)

In support of its Reply, Entrata submitted a declaration of Gregory D. Adams. (ECF No.

482.) Dr. Adams responded to Mr. Milbury's declaration. (*See* Adams Decl. ¶ 2, ECF No. 482 at

2.) But Dr. Adams did not specifically respond to Mr. Milbury's arguments that Dr. Kearl largely

ignored much of the yCRM data produced in November and December of 2018.

Analysis

## Rule 37

Rule 37 of the Federal Rules of Civil Procedure "provides generally for sanctions against parties or persons unjustifiably resisting discovery." See Notes of Advisory Committee on 1970 Amendments to Rules. Rule 37(c) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

Rule 26(a)(2)(A) requires a party to disclose to the other party the identity of expert witnesses. Fed. R. Civ. P. 26(a)(2)(A). "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report . . . ." Fed. R. Civ. P. 26(a)(2)(B). "The [initial] report must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). "Rule 26(a)(2)(D)(ii) defines an expert's rebuttal disclosures as those 'intended solely to contradict or rebut evidence on the same subject matter identified by another party.'" *Crew Tile Distribution, Inc. v. Porcelanosa Los Angeles, Inc.*, No. 13-CV-3206-WJM-KMT, 2017 WL 633044, at *2 (D. Colo. Feb. 16, 2017).

As noted above, on September 11, 2018 the court entered an order setting a deadline for expert reply reports and a deadline for "supplemental reply reports (limited to new discovery)." (ECF No. 365 at 1.) The order also provided:

> In the Expert Reply Reports, the experts are to be instructed to note, via citation or otherwise, when they are referring to or relying upon new discovery material (i.e., discovery produced after the date of this Stipulated Order). This is to allow the parties and experts to more easily identify the materials that may properly be discussed in the Supplemental Reply Reports.

(ECF No. 365 at 2.) The court agrees with Entrata that the court adopted the parties' agreement through this Order. The court also agrees that Yardi's September 10, 2018 email demonstrates that the agreement was for the experts to rely on newly produced information in the Reply Reports and to "keep the supplemental reports focused upon *responding to the new information*" in the preceding Reply Reports. (*See* ECF No. 461-1 at 3 (emphasis added).) The court holds that the September 11, 2018 Order required the parties to limit their Supplemental Reports to responses to new analyses and opinions in the immediately preceding Reply Reports based on new discovery.

The next question for the court is what effect the parties' November 14 and 15 emails had on the court's September 11, 2018 Order.

As noted above, on November 14, 2018, Yardi's lead counsel wrote to Entrata's lead counsel:

> Our 30(b)(6) deponent is not available until early January, due to a serious medical issue. If you truly are concerned about expert reports, note that the Court's 9/11/18 scheduling order provides that the February 1, 2019 reports are to **address** 'new discovery,' which is precisely what we're dealing with here. Your experts thus have more than enough time to consider the yCRM data, and an early January 30(b)(6) deposition, before completing their reports.

(ECF No. 470-6 at 3 (emphasis added).)

Here, Yardi's counsel misstates the court's September 11, 2018 Order. The Order did not allow the parties to "address" the new discovery for the first time in their Supplemental Reply Reports. Rather, it only allowed the experts to respond to the new information in the immediately preceding expert reply reports. On November 15, 2018, Entrata's counsel responded, stating, in relevant part:

> [W]e were operating under the understanding that you would insist that our experts address the yCRM data in their December reports. Given those are only

three weeks away and there's a major, intervening holiday, too little time remained.

In light of your position now, however, that our experts need not address Yardi's yCRM data and the related submissions (together, "yCRM Information") until their February 1, 2019 reports, we will withdraw the present notice and conduct the deposition in January as you proposed. We understand that Yardi will not object to any of our forthcoming expert reports on the ground that any analysis, consideration, or discussion of the yCRM Information is untimely.

(ECF No. 470-6 at 2.)

"Generally, Rule 29 allows for stipulations regarding discovery procedures." *Garza v. Webb Cty., Tex.*, 296 F.R.D. 511, 511 (S.D. Tex. 2014). "Unless the court orders otherwise, the parties may stipulate that" certain "procedures governing or limiting discovery be modified—but a stipulation extending the time for any form of discovery must have court approval if it would interfere with the time set for completing discovery, for hearing a motion, or for trial." Fed. R. Civ. P. 29(b). A "stipulation" is "[a] voluntary agreement between opposing parties concerning some relevant point; esp., an agreement relating to a proceeding, made by attorneys representing adverse parties to the proceeding." Black's Law Dictionary (10th ed. 2014).

The parties' November 14 and 15, 2018 emails impacted the court's September 11, 2018 Order in one of three possible ways.

First, as Yardi appears to argue, the emails constituted an agreement between the parties to allow both sides to "discuss the New Discovery" in their supplemental reply reports. (ECF No. 472 at 2.) In support of this argument, Yardi relies primarily on two things. First, Yardi points to Dr. Kearl's December 2018 report, in which he states "I also understand that the parties will be submitting supplemental reports on February 1, 2019 to incorporate information (both data and documents) that has recently been produced." (*See* ECF No. 470 at 7 (citing ECF No 472-3 at 3).) But as discussed above, a "stipulation" is an agreement made by attorneys. What the expert

believed the agreement between the parties to be is of little relevance. What is relevant is what Entrata's counsel believed the agreement to be. Yardi points to comments Entrata's counsel made at a deposition to support its argument that the parties agreed that both sides could discuss the "new" yCRM data in their supplemental reply reports. (*See* ECF No. 472-1 at 6.) Yardi's arguments are not completely meritless. Entrata's lead counsel did make comments that could support Yardi's position.

Second, as Entrata appears to argue, the parties' November 14 and 15 emails modified the court's September 11, 2018 Order to allow Entrata to discuss "new" yCRM data—but not Yardi. In his November 15 email, Entrata's lead counsel correctly identified what the parties had previously agreed to when he stated that Entrata was "operating under the understanding that" Entrata's experts were required to "address the yCRM data in their December reports." (ECF No. 470-6 at 2.) He then noted that Yardi had changed its position when he stated: "[i]n light of your position ___**now**___, however, that [Entrata's] experts need not address Yardi's yCRM data . . . ." (ECF No. 470-6 at 3 (emphasis added).) Entrata's lead counsel then arguably made clear that he viewed this change in the parties' agreement—to allow experts to address the "new" yCRM data in their supplemental reports—to apply only to *Entrata's* experts when he stated: "We understand that Yardi will not object to any of ___**our**___ forthcoming expert reports on the ground that any analysis, consideration, or discussion of the yCRM Information is untimely." (ECF No. 470-6 at 2 (emphasis added).) Based on the record available to the court, Yardi's lead counsel never responded to this email to make clear that Yardi sought to allow its experts to address the "new" yCRM data for the first time in their supplemental reply reports. "A party's silence may operate as acceptance in certain circumstances." *See Concur-Texas, LP v. Duradril, LLC*, No. 2:14-CV-00218-DB, 2016 WL 2596028, at *5 (D. Utah May 5, 2016) (citing *Ewell & Son, Inc. v. Salt*

*Lake City Corp.*, 493 P.2d 1283, 1286 (Utah 1972)).[6] Yardi's silence arguably constitutes an acceptance under Rule 29(b) of Entrata's proposal to allow *its* experts to address the "new" yCRM data in their supplemental reply reports.

Third, it is possible that the parties' November 14 and 15 emails had no impact on the court's September 11, 2018 Order. "[P]arties' ability to stipulate to discovery procedures under Rule 29 is not completely unfettered, as some stipulations under Rule 29 require court approval." *Garza*, 296 F.R.D. at 512. "For most types of cases, Rule 16 requires judges to enter scheduling orders that limit matters such as the time to complete discovery." *Id.* (citation omitted). "To avoid tension with Rule 16's mandates, Rule 29 'keys in on the sorts of matters courts are to include in scheduling orders' and requires 'court approval whenever a stipulated extension would interfere with the time set for completing discovery, for hearing a motion, or for trial.'" *Id.* (quoting 8A Charles Alan Wright et al., Federal Practice and Procedure § 2092 (3d ed. 2010)). "In other words, a court must approve of any party agreement to modify a court-ordered deadline." *Id.* Both parties argue that the November 14 and 15 emails modified the court's September 11, 2018 Order. In the court's view, court approval was required to amend the September 11, 2018 Order.

The court heard the parties' arguments on an emergency basis. Due to the limited time in which the court has had to consider these issues, the court is not prepared to determine the full extent of sanctions that may be appropriate under Rule 37. The court thus reserves ruling on the

---

[6] In determining whether parties have formed a "stipulation" under Rule 29, at least three district courts have looked to the forum state's contract law. *See Scott-Iverson v. Indep. Health Ass'n, Inc.*, No. 13-CV-451V(F), 2016 WL 3444226, at *3 (W.D.N.Y. June 23, 2016) (looking to New York contract law to find that "a Plaintiff's agreement to the stipulation may be inferred from the Plaintiff's counsel's silence or failure to respond to [an] e-mail expressly sent to confirm such stipulation."); *see also Valenzuela v. Willette*, No. 5:14-CV-62, 2014 WL 12620827, at *2 (S.D. Tex. Nov. 28, 2014); *Widevine Techs., Inc. v. Verimatrix, Inc.*, No. CIVA 2-07-CV-321, 2009 WL 4884397, at *2 (E.D. Tex. Dec. 10, 2009).

motion to strike Mr. Hoffman's supplemental report. Nevertheless, as discussed below, the court finds, based on its inherent authority, that sanctions against Yardi are warranted.

<u>Inherent Authority</u>

"Federal courts have very broad discretion to exercise their inherent powers to sanction a full range of litigation misconduct that abuses the judicial process." *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1300–01 (D. Utah 2016) (citation omitted). "These inherent powers are not governed by any rule or statute." *Id.* "They are instead 'necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (citation omitted). "Within this discretion lies the power to exclude or admit expert testimony . . . whose use at trial is in bad faith or would unfairly prejudice an opposing party." *See Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980) (citations omitted).

The court finds that Yardi has repeatedly acted in bad faith in delaying the production of the yCRM data. Much of Yardi's misconduct and delays caused the need for the supplemental reply reports in the first place. To summarize:

- Magistrate Judge Warner ordered Yardi to review its September 29, 2017 document production and produce only those documents that were responsive to Entrata's request after it dumped approximately 1.3 million documents on Entrata.

- This court ordered special master review of Yardi's privilege logs after it determined that there was a reasonable basis to believe that many documents Yardi was withholding were not privileged. This resulted in Yardi withdrawing its privilege claims on thousands of documents. The production of some of these documents aided Entrata in discovering that Yardi's November 2018 yCRM production was incomplete. (*See* ECF No. 461-13 at 3.)

- Regarding the yCRM data, Yardi repeatedly represented to the court that it had complied with its discovery obligations. Time and time again this proved false. Entrata was *twice* forced to seek relief from the court to force Yardi to disclose relevant yCRM data.

- On October 11, 2018 Magistrate Judge Wells ordered a 30(b)(6) "deposition where Entrata [could] ask questions regarding the yCRM data, its production, methodology, and questions regarding missing data following the production of any additional yCRM data by Yardi." (ECF No. 380 at 5.) Yardi did not make this witness available until January of 2019, and did not offer any explanation as to why no other witness could fill that role.

- Even after Yardi stated that it was "interpreting" Magistrate Judge Wells' Order "broadly" to include "all Companies recorded as managing any multi-family residential units (no matter how few)," it still withheld yCRM data. It only produced this yCRM data—Portfolio2—after Entrata discovered and complained it was missing. Dr. Rausser then used Portfolio2 extensively in his Supplemental Reply Report. Yardi offers no explanation of why Yardi did not produce this data to Dr. Rausser previously, so he could have relied on this same data at the time he issued his August 2018 report.[7]

Sanctions

The court finds that sanctions are warranted. Entrata requests that the court "strike Yardi's Supplemental Reply Reports and all other expert analyses and opinions Yardi has produced since December 7, 2018, and preclude any testimony about any such analyses or opinions." (ECF No. 480 at 4.) The court is concerned about the practical effects that this sanction could have at trial. For example, if Entrata's experts testify about yCRM data that was produced in November or December of 2018, would Entrata seek to prevent Yardi's experts

---

[7] The court also notes that Yardi has submitted multiple *sworn* declarations that have proved to be inaccurate.

from responding? Entrata's proposed sanction appears to present uncertainty and a very difficult rule to establish the parameters for Yardi's response.

The court is also troubled by Joseph Milbury's statement that Dr. Kearl, in his supplemental reply report, chose "to ignore the universe of additional Companies and Clients produced as a result of the broadened scope requested by Entrata, which encompassed *any* Company with even a single multifamily residential unit." (Milbury Decl. ¶ 5, ECF No. 472-6 at 5 (emphasis in original).) The court recognizes that Yardi was in possession of substantially all of the yCRM data and could have used it in earlier reports. Its failure to do so here prejudiced Entrata and severely impacted completion of discovery and the schedule for resolving this case on the merits. Nevertheless, there is a clear preference in the Federal Rules and court precedent to resolve disputes on their merits. Striking Yardi's supplemental reports may not be the appropriate balance between these competing objectives.

The court orders further oral argument limited solely to what sanctions would be appropriate under the circumstances.

## Conclusion

The court orders as follows:

I.     The parties should prepare for their depositions with the assumption that some or all of Yardi's supplemental expert reports will be allowed.

II.    The court sets a hearing for Monday, March 4, 2019 at 3:30 p.m.

   a.  The parties are respectfully instructed to come prepared to address how sanctions should apply and to what extent.

b.   The parties are also respectfully instructed to come prepared to discuss possible trial dates.

III.   Both Yardi and its law firm, Nixon Peabody, are warned and put on notice that any further misrepresentations, false declarations, or other misconduct may result in further sanctions, including striking all of Yardi's experts. Sanctions may also include an entry of default judgment in Entrata's favor.

DATED this 26th day of February, 2019.

BY THE COURT:

_____
Clark Waddoups
United States District Judge